OPINION
{¶ 1} Defendant-appellant, Frances P. May ("May"), appeals the June 11, 2003 "judgment entry" and "decision" of the Geauga County Court of Common Pleas, finding the existence of a valid and enforceable land installment contract between May and her son, plantiff-appellee John L. Phillips ("Phillips"). For the following reasons, we affirm the decision of the court below.
 {¶ 2} The present litigation began on February 20, 2002, when Phillips filed a complaint against May seeking, inter alia, a declaratory judgment regarding the validity of a land installment contract between May and Phillips and unjust enrichment. May answered and counter-claimed against Phillips seeking, inter alia, judgment against Phillips on a promissory note for $35,000.00, plus interest and for unpaid rents. On February 3, 2003, a bench trial was held on the claims specified above.
 {¶ 3} In 1995, May, as a trustee, owned two parcels of property located at 11337 and 11327 Taylor May Road in Auburn Township, Geauga County, Ohio. May resided at 11337 Taylor May Road. The property at 11327 Taylor May Road, which is the subject of the present litigation, consisted of 15.589 acres. About half of the property at 11327 Taylor May Road was unimproved. The other half contained a "brick cottage" with a driveway leading out to Taylor May Road, a lake, a lawn area, and several sheds or out buildings.
 {¶ 4} On November 26, 1995, May and Phillips signed the following agreement regarding the property located at 11327 Taylor May Road:
 11/26/95 Brick Cottage 11327 Taylor May Road approx 7½ acres x 300' Approx frontage I am selling to John Phillips, my son, the above for $150,000.00 to be paid by monthly payments of $650 a month for as long as it takes to pay it off @ 9% Maximum. If John ever sells the place, I, Fran May, have 1st option to buy it back at the same price terms. /s/ John L. Phillips /s/ Fran May
 {¶ 5} May wrote out the agreement by hand on an Evans Printing Company notepad of "things to do today."
 {¶ 6} At trial, May and Phillips gave conflicting testimony regarding the circumstances and intent behind this agreement. May testified that she was not certain whether she wanted to sell half of the parcel with the cottage to Phillips when she signed the agreement. According to May, Phillips approached her begging her to consider selling him the land. May agreed to write down some proposals, or "talking points," that Phillips could take to a bank to obtain financing. May denied that the terms in the agreement were negotiated; rather, May claimed that they were "essentially" dictated to her by Phillips. After signing the agreement, May assumed that Phillips would be unable to obtain financing from a bank. Thereafter, May testified that it was not until July 2001 that Phillips raised a claim to have a contract for the purchase of the property at 11327 Taylor May Road.
 {¶ 7} Phillips testified that the agreement reached on November 26, 1995, was a contract for the sale of land. According to Phillips, the agreement was reached after discussing the matter with May. Phillips testified that May proposed the sale price of $150,000.00 and that he felt that this was a fair price. Phillips also testified that May did not ask for interest on the principal, but wanted an option to charge interest, up to a maximum rate of nine percent, at a latter time.
 {¶ 8} At the time May and Phillips wrote their agreement, the cottage at 11327 Taylor May Road was being rented to a tenant for $650.00 a month. Phillips moved into the cottage sometime in the spring of 1996. In April 1997, Phillips' wife and two stepchildren moved into the cottage with him.
 {¶ 9} On the same day that May and Phillips executed their agreement, Phillips wrote May a check for $650.00. The memo portion of this check stated "1st m[on]th rent cottage." Except for a six or seven month period from July 1999 to January 2000, Phillips paid May $650.00 a month. The purpose of these checks was variously described on the checks themselves as "rent," "cottage payment," and "cottage mort[gage]." Although he believed that he was purchasing the cottage and property, Phillips claimed that he wrote "rent" on the checks out of force of habit. May testified that Phillips paid her $650.00 a month pursuant to a verbal lease agreement that they entered into in August or September of 1996. May claimed that Phillips' payments made prior to August or September of 1996 were either made on behalf of the previous tenant or were repayments for a personal loan.
 {¶ 10} Beginning in April 1996, Phillips began reimbursing May for the cost of homeowners' insurance on the cottage. Eventually, Phillips obtained insurance in his name and in his wife's name.
 {¶ 11} Beginning in September 1996, Phillips began paying the property taxes on the entire fifteen-acre parcel at 11327 Taylor May Road. According to Phillips, he agreed to pay the property taxes pursuant to a verbal agreement reached with May at the time of the written agreement to sell the property. According to May, Phillips agreed to pay the property taxes in lieu of an increase in his rent.
 {¶ 12} In July 1999, May loaned Phillips $35,000.00 to help him start his own excavating business. According to the note, also executed on an Evans Printing Company notepad, Phillips was to repay the loan by July 2001. Phillips acknowledged that he has not paid back May any part of this money.
 {¶ 13} On June 11, 2003, the trial court issued its judgment entry decreeing that the agreement entered into by May and Phillips on November 26, 1995, "constitutes a valid and binding contract for the purchase of 7½ acres of real property and the brick cottage thereon with approximately 300 feet frontage located at 11327 Taylor May Road * * * for the sum of $150,000. to be paid by monthly payments of $650. a month plus interest at a maximum rate of 9% per annum commencing on such date as [May] informs [Phillips] that she desires interest to commence and the rate of such interest." The trial court ordered Philips to obtain a metes and bounds description of the property. The trial court also entered judgment in May's favor for $35,000.00, plus interest at the rate of 10% per annum commencing July 1, 2001.
 {¶ 14} On July 7, 2003, May filed an appeal. This Court remanded the case for lack of a final order because the legal description of the subject property had not yet been prepared or approved by the trial court. On May 10, 2004, the trial court approved the legal description of the property prepared by Phillips. Thereupon the appeal was refiled. May raises the following assignments of error:
 {¶ 15} "[1.] The Trial Court committed reversible error by declaring a purported land installment agreement was enforceable where the document upon which it was based did not comply with nearly any of the statutory requirements for such a contract set out in R.C. 5313.02(A).
 {¶ 16} "[2.] The Trial Court's findings of fact and its conclusion of law that the handwritten document created on November 26, 1995, in conjunction with the parties' conduct thereafter, was sufficient for it to conclude the parties intended to create an enforceable land installment contract so that the Trial Court could `fill in' omitted terms are against the manifest weight of the evidence and otherwise contrary to law.
 {¶ 17} "[3.] The Trial Court erred in entering declaratory judgment for John L. Phillips which resulted in an equitable lien against real property owned by the May Trust, a party never sued in this case, and which therefore had no opportunity to defend against Phillips' claims."
 {¶ 18} In her first assignment of error, May argues that the November 26, 1995 agreement is unenforceable as a land installment contract pursuant to R.C. 5313.02(A).
 {¶ 19} R.C. 5313.02(A) lists the minimum contents that "[e]very land installment contract * * * shall contain." These contents are: "(1) The full names and then current mailing addresses of all the parties to the contract; (2) The date when the contract was signed by each party; (3) A legal description of the property conveyed; (4) The contract price of the property conveyed; (5) Any charges or fees for services that are includable in the contract separate from the contract price; (6) The amount of the vendee's down payment; (7) The principal balance owed, which is the sum of the items specified in divisions (A)(4) and (5) of this section less the item specified in division (A)(6) of this section; (8) The amount and due date of each installment payment; (9) The interest rate on the unpaid balance and the method of computing the rate; (10) A statement of any encumbrances against the property conveyed; (11) A statement requiring the vendor to deliver a general warranty deed on completion of the contract, or another deed that is available when the vendor is legally unable to deliver a general warranty deed; (12) A provision that the vendor provide evidence of title in accordance with the prevailing custom in the area in which the property is located; (13) A provision that, if the vendor defaults on any mortgage on the property, the vendee can pay on that mortgage and receive credit on the land installment contract; (14) A provision that the vendor shall cause a copy of the contract to be recorded; (15) A requirement that the vendee be responsible for the payment of taxes, assessments, and other charges against the property from the date of the contract, unless agreed to the contrary; (16) A statement of any pending order of any public agency against the property."
 {¶ 20} The November 26, 1995 handwritten agreement between May and Phillips partially complies with roughly half of these requirements. It contains the parties' names, but not their addresses. It contains the date the agreement was signed. It contains a description of the property, but not in metes and bounds. It provides the contract price of the property which is the same as the principal owed, since there were no separate service charges or fees and no down payment was required. It specifies the amount of each installment and that payments are to be made monthly. It includes the maximum rate of interest. Finally, there was parol evidence, supported the parties' performance of the agreement, that Phillips was responsible for paying the taxes on the property. May argues that this "nearly complete non-compliance" with R.C. 5313.02 renders the agreement unenforceable by either party. We disagree.
 {¶ 21} "Despite the mandatory language of R.C. 5313.02, it is well-established that a land contract may be held to be enforceable as between parties even though it does not strictly comply with the requirements of R.C. 5313.02." Gollihue v.Russo, 152 Ohio App.3d 710, 714, 2003-Ohio-2663, at ¶ 33, citingReal Flo Properties v. Kelly (Dec. 17, 1999), 6th Dist. No. L-99-1099, 1999 Ohio App. LEXIS 6030, at *6 ("a document need not strictly comply with R.C. 5313.02(A) in order to be deemed an enforceable land installment contract"), and Shimko v. Marks
(1993), 91 Ohio App.3d 458, 461-462 (substantial compliance with the statutory requirements of R.C. 5313.02 was sufficient to establish a valid installment contract).
 {¶ 22} Chapter 5313 of the Revised Code is a consumer protection statute. Its purpose is to protect consumers by making specific information available to vendees in the land installment contract. Young v. Hodapp (Dec. 29, 1986), 12th Dist. No. CA85-08-094, 1986 Ohio App. LEXIS 9534, at *7; Fannin v. Reagan
(Nov. 9, 1995), 11th Dist. No. 94-P-0091, 1995 Ohio App. LEXIS 5023, at *9; Hilton v. Tire Tread Development, Inc. (June 30, 1993), 11th Dist. No. 92-P-0053, 1993 Ohio App. LEXIS 3356, at *9-*10. "[T]he statute was not designed as a way for sellers to escape from contracts they wish to void." Young, 1986 Ohio App. LEXIS 9534, at *7.
 {¶ 23} Although consumer protection statutes are not written exclusively for the benefit of vendees, in practice, courts have usually voided contracts under R.C. 5313.02 where there has been material non-compliance to the detriment of the buyer. See, e.g.Standard Federal v. Asencio (Feb. 9, 1999), 9th Dist. No. 98CA007011, 1999 Ohio App. LEXIS 398, at *12-*13 (voiding installment contract where vendor failed to disclose encumbrances to vendee and placed additional encumbrances on the property after the execution of the land contract); Woodling v. Gale
(Nov. 23, 1977), 9th Dist. No. 8568, 1977 Ohio App. LEXIS 8650, at *3-*4 (voiding installment contract where vendor failed to disclose encumbrances and citations by housing authority). As theWoodling court observed, it is only when the omission of information required by R.C. 5313.02 is "substantial enough to cause a buyer to refuse to execute the contract if he had knowledge of such facts" does the contract become voidable. 1977 Ohio App. LEXIS 8650, at *3.
 {¶ 24} In the present case, May does not argue that any of the information omitted from the agreement was material to her decision to sell the property. Nor has she demonstrated how the omission of this information has worked to her detriment. In fact, May's principal argument is that she never intended to sell property, regardless of whether the agreement contained the information required by R.C. 5313.02. The record before the court contains a written agreement evidencing May's intention to sell the property. For seven years, May accepted payments from Phillips in apparent conformity with this agreement and allowed Phillips to pay the property taxes and to purchase house insurance. Accordingly, we hold that May cannot now avoid that agreement because it does not comply with the requirements of R.C. 5313.02.[1] May's first assignment of error is without merit.
 {¶ 25} In her second assignment of error, May argues that the November 26, 1995 agreement fails under general principles of contract law because the agreement is vague as to its essential terms. May further claims that the trial court erred by "filling in" the missing terms.
 {¶ 26} The interpretation of a contract is a matter of law when it is clear and unambiguous and there is no issue of fact to be determined. Inland Refuse Transfer Co. v. Browning-FerrisIndustries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322, citingAlexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, at paragraph one of the syllabus. Questions of law are reviewed by a court under a de novo standard of review. Nationwide Mut.Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 108, citing Ohio Bell Tel. Co. v. Pub. Util. Comm. (1992),64 Ohio St.3d 145, 147.
 {¶ 27} "However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term."Inland Refuse, 15 Ohio St.3d 322, citing Hallet Davis PianoCo. v. Starr Piano Co. (1911), 85 Ohio St. 196. In the review of factual findings, great deference is given to the lower court's determinations. Guman Bros., 73 Ohio St.3d at 108. A trial court's factual findings are entitled to a presumption of correctness and will not be reversed as being against the manifest weight of the evidence if they are supported by competent, credible evidence. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 79, citing C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.3d 279, at syllabus.
 {¶ 28} May argues that the trial court's finding that the parties intended the November 26, 1995 agreement to be an enforceable contract is against the manifest weight of the evidence. May testified at trial that it was not her subjective intent to form a binding contract for the sale of the land. Notwithstanding May's testimony to the contrary, the agreement that she wrote out and signed unequivocally states, "I am selling to John Phillips, my son, the above [described property and cottage] for $150,000.00." In determining that May and Phillips had intended to create a binding contract, the trial court did not need to go beyond the parties' intent as expressed in the written instrument. "The agreement of parties to a written contract is to be ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the express terms thereof." Blosser v.Enderlin (1925), 113 Ohio St. 121, paragraph one of the syllabus; Kelly v. Medical Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of the syllabus. "The relevant inquiry is the manifestation of intent of the parties as seen through the eyes of a reasonable observer, rather than the subjective intention of the parties." Bennett v. Heidinger (1986), 30 Ohio App.3d 267,268, citing 1 Corbin on Contracts (1963), Section 9 and Restatement of the Law 2d, Contracts (1981), Section 1 and 3. Contrary to May's position, therefore, her subjective state of mind when she signed the November 26, 1995 agreement is irrelevant to its validity as a contract.
 {¶ 29} May also takes exception to several of the trial court's factual findings bearing on the parties' intent to create a binding contract. In particular, May contests the court's findings that the monthly payments made by Phillips to May were made pursuant to the November 26, 1995 agreement despite the fact that many of the checks indicate they were for "rent." However, there is competent and credible evidence to support the trial court's finding. Although many of the checks bore the subscription "rent," some checks instead bore the subscription "cottage payment" or "cottage mortgage." Phillips made his first payment to May on the same day that the November 26, 1995 agreement was signed. Phillips made payments to May for several months during which he was not occupying the cottage. Moreover, May's testimony that Phillips was actually leasing the property from her is unsupported by any documentary evidence. Therefore, the trial court's determination is not against the manifest weight of the evidence.
 {¶ 30} May also takes exception to the trial court's findings regarding payment of the property taxes, house insurance, improvements to and maintenance of the property, and May's personal experience in the real estate business. On all these issues there was conflicting testimony given at trial and in each case we find some testimony to support the findings of the trial court. Nor, were we to hold the trial court's findings against the weight of the evidence on any of these issues, would that holding alter the validity of the trial court's principal determination that the parties intended the November 16, 1995 agreement to be a binding contract.
 {¶ 31} Under the second assignment of error, May also argues that the November 26, 1995 agreement is unenforceable as a contract because there was no "meeting of the minds" as to two essential elements of the agreement. May asserts first that "there was no agreement on payment of interest to be paid on the supposed purchase price." We disagree.
 {¶ 32} The November 26, 1995 agreement provided for interest "@ 9% Maximum." The trial court interpreted this provision to mean that May was entitled to "interest at a maximum rate of 9% per annum commencing on such date as [May] informs [Phillips] that she desires interest to commence and the rate of such interest." The court further found that "no evidence was presented that demonstrated that [May] had demanded interest from [Phillips]."
 {¶ 33} Initially, we point out that the rate of interest is not an essential term in a land contract of this sort and that the courts have been willing to enforce land installment contracts where no rate of interest is provided for in the written agreement. Real Flo, 1999 Ohio App. LEXIS 6030, at *8;Whitacre v. Starks (June 29, 1999), 5th Dist. No. 1998CA0307, 1999 Ohio App. LEXIS 3098, at *4-*5. Moreover, the agreement at issue unambiguously provides for interest up to a maximum rate of 9 percent. The agreement does not specify at what time or at what rate interest is to commence. Phillips testified that May wanted a provision in the agreement giving her an option to charge interest at a maximum rate of 9 percent, although she did not ask for interest initially. May maintains that Phillips insisted that she write the interest provision in the agreement. May does not claim to have asked that Phillips pay interest at any time prior to the commencement of litigation. Accordingly, we find that the agreement provides for interest and that the trial court's determination that May has not exercised that option is supported by competent and credible evidence.
 {¶ 34} The second essential term that May claims is uncertain is the description of the property being sold. The trial court held as follows: "It is also clear from the evidence that the parties were in full agreement as to the location of the easterly boundary of the 7½ acres being conveyed and in general agreement as to the back property line and westerly line. From the evidence presented, the westerly boundary line would parallel the easterly line, and the back or northerly line would connect the two side yard lines. The depth or length of the side yard lines would be determined by dividing the square feet in 7½ acres (43,560 X 7.5 = 326,700) by 300, resulting in side property lines of approximately 1,089 feet." According to May, this finding is not supported by competent and credible evidence and it remains uncertain what portion of the 15.589 acres at 11327 Taylor May Road is subject to the agreement. Again, we disagree.
 {¶ 35} The disputed parcel's total frontage on Taylor May Road is 604 feet. Therefore, any division of the parcel providing for 300 feet of frontage on Taylor May Road will bisect the parcel into two, almost equal, sections. Moreover, each section would consist of almost seven and a half acres, as provided for in the November 26, 1995 agreement. The November 26, 1995 agreement further specifies that May is selling that part of the parcel containing the brick cottage. Phillips testified that he measured the 300 feet of frontage from the eastern boundary line of the parcel so as to include the brick cottage. There is, therefore, no question as to which portion of parcel at 11327 Taylor May Road is intended in the agreement.
 {¶ 36} Ohio law does not require a metes and bounds legal description of property in order to create a binding agreement to sell that property. McCarty v. McCarty (Dec. 21, 1994), 4th Dist. No. 94 CA 575, 1994 Ohio App. LEXIS 6051, at *17. "A contract for the sale of land must definitely point out the particular land to be conveyed or must furnish the means of identifying it with certainty." Schmidt v. Weston (1948),150 Ohio St. 293, paragraph three of the syllabus. In determining whether property is described with reasonable specificity, this Court has held that "every detail relating to the description of the land is not required" and that "parol evidence is admissible to show the surrounding circumstances and conditions existing at the time in order that the trial court may be reasonably satisfied." Schafer v. Faylor (1944), 74 Ohio App. 533, 541
(emphasis sic). Therefore, we hold that the November 26, 1995 agreement describes the property with reasonable certainty and specificity.
 {¶ 37} May's second assignment of error is without merit.
 {¶ 38} In her third and final assignment of error, May argues that on November 26, 1995, the subject property was owned by the "Frances P. May Trust" and that Phillips was aware of this fact. In August 2001, May created the "Frances P. May Living Trust" and transferred ownership of the property at 11327 Taylor May Road from the Frances P. May Trust to the Frances P. May Living Trust. Since Philips did not file suit against either trust or against May in her capacity of trustee, the trial court's judgment is not binding on the true owner of the disputed property.
 {¶ 39} The trial court held that although the property was titled to May as trustee, "[d]efendant Frances P. May was the real party in interest" and, therefore, "Francis P. May, individually and as trustee, is bound by the terms of the written agreement to sell the real property to [Phillips]." The evidence in the record demonstrates that, prior to August 2001, May was not in the habit of signing documents relating to the property at 11327 Taylor May Road indicating her capacity as trustee. No written documents regarding the Frances P. May Trust were ever submitted to the trial court and nothing definite can be said about the terms of that trust. According to the terms of the successor Frances P. May Living Trust, the "Trust Agreement" was made between Frances P. May as "Grantor" and "Trustor" and Frances P. May as sole "Trustee" and for Frances P. May as "Beneficiary" during her lifetime.
 {¶ 40} Civil Rule 17(A) provides that "[e]very action shall be prosecuted in the name of the real party in interest." "A `real party in interest' has been defined as `* * * one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefited or injured by the outcome of the case.'"Shealy v. Campbell (1985), 20 Ohio St.3d 23, 24, quoting WestClermont Edn. Assn. v. West Clermont Bd. of Edn. (1980),67 Ohio App.2d 160, 162 (internal citations omitted). An essential feature of a trust is the separation of the legal estate of the subject res in the person of the trustee from the equitable estate and beneficial enjoyment thereof in the person of the beneficiary. Hill v. Irons (1953), 160 Ohio St. 21, 27, quoting 54 American Jurisprudence (1945) 46, 47, Trusts, Section 35. "A trustee technically is not a real party in interest as it does not have a direct interest in the outcome of an action involving a trust; but by virtue of Civ.R. 17, * * *, the trustee is permitted to bring the action." Security Trust Co. v. Gross
(Dec. 16, 1985), 12th Dist. Nos. CA83-06-054, CA83-06-058, and CA83-06-069, 1985 Ohio App. LEXIS 9653, at *13.
 {¶ 41} In the present case, where May was not only the sole trustee, but also the sole beneficiary during her lifetime, the trial court properly concluded that May was the real party in interest. Contrary to May's position, a trust is not a legal person in the same sense that a corporation is a legal person, i.e. having the capacity to sue and be sued and to hold title to real property. R.C. 1701.13(A) and (D). A trust is more properly conceived of as "a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person." Hill, 160 Ohio St. at 26, quoting Restatement of the Law, Trusts (1935), Section 2. Although property may be titled to a trust, the trust itself has no character independent of its representative trustee. See, e.g. Bank of the UnitedStates v. Deveaux (1809), 9 U.S. 61, 91 ("When [persons suing by a corporate name] are said to be substantially the parties to the controversy, the court does not mean to liken it to the case of a trustee. A trustee is a real person * * * who has the whole legal estate in himself. At law, he is the real proprietor, and he represents himself, and sues in his own right * * * [;] the corporate name represents persons who are members of the corporation.").
 {¶ 42} The trial court's identification of May as the real party in interest is also supported by case law. In Liberty Mut.Ins. Co. v. Paris (May 20, 1999), 8th Dist. Nos. 74064 and 74065, 1999 Ohio App. LEXIS 2292, the named defendant in the action was "Julius Paris" without any indication whether he was being sued "individually" or "as trustee" of the subject property. Appellants moved to dismiss arguing that the action had been commenced against Julius Paris, individually, and not against Julius Paris "in the name of the `real party in interest'." Id. at *15-*16. The court of appeals rejected this argument noting that the body of the complaint alleged that "Julius Paris, as cotrustee, owned legal title to [the subject] property." Id. at *18-*19. In Phillips' complaint, he similarly alleges that May owned the property at 11327 Taylor May Road, "either individually or in her capacity as Trustee, continuously since before 1987."
 {¶ 43} In Young v. Louisville Title Agency for N.W. Ohio,Inc. (Jan. 15, 1993), 6th Dist. No. 91WD097, 1993 Ohio App. LEXIS 66, appellant sought to avoid a land contract by arguing that that the appellee failed to sign "the purchase agreement with some indication of her capacity as sole trustee for the trust which held the title to the land." Id. at *13. Again, the court of appeals rejected the argument noting that the appellee was the sole trustee of the trust holding title to the land and that there we no allegations of misrepresentation as to the true ownership of the land. Id. at *14.
 {¶ 44} Finally, in Smith v. Barry (Feb. 15, 2000), 3rd Dist. No. 14-99-29, 2000 Ohio App. LEXIS 471, the lower court ruled that a land contract was unenforceable, as a matter of law, where the sole trustee of the trust that held title to the subject property failed to indicate in the written agreement his capacity to act as trustee. Id. at *9. The court of appeals reversed the lower court holding that it was a factual question whether the trustee had entered into a binding, enforceable contract. Id. at *10.
 {¶ 45} For the foregoing reasons, we uphold the trial court's finding that May was the real party in interest and that May is bound, both individually and trustee, by the terms of the November 26, 1995 agreement. May's third assignment of error is without merit.
 {¶ 46} The decision of the Geauga County Court of Common Pleas is affirmed.
Christley, J., O'Neill, J., concur.
[1] We note that at trial May submitted as evidence a land installment contract that she had entered previously prepared by a professional realtor. As demonstrated on cross-examination, even this "professional" contract failed to include all the elements required by R.C. 5313.02.