OPINION
{¶ 1} Defendant-appellant, Giltz Associates, Inc., appeals the judgment of the Trumbull County Court of Common Pleas, awarding damages to plaintiffs-appellees, Daniel and Mary Jane Reitz, in an action for breach of a real estate contract. For the following reasons, we affirm the decision of the court below.
 {¶ 2} The Reitzes owned approximately 2.79 acres of land located at 2725 Niles Cortland Road in Howland Township, north of U.S. Route 422. The Reitzes resided at the property which contained a house, guest house and swimming pool. In the late 1990s, the area around Niles-Cortland Road and Route 422 was being developed commercially. In 1996, Barbara J. Peyatt, a realtor acting on behalf of Giltz Associates, approached the Reitzes about selling their property. In April 1997, the Reitzes and Giltz signed a Real Estate Purchase Agreement for the sale of the property for $555,000. The agreement provided Giltz with 120 days to conduct due diligence plus an additional 60 days for further diligence or to close the sale.
 {¶ 3} The sale did not close within 180 days of the agreement being signed. On November 13, 1997, the Reitzes filed suit against Giltz alleging that Giltz was in breach of the agreement and seeking to have the agreement declared null and void so that the property could be sold to other persons. The court referred the parties to mediation. In June 1998, the parties reached an oral settlement agreement at a mediation conference, which reaffirmed the agreement to sell with certain modifications. An Agreed Judgment Entry was drafted which Giltz refused to sign. On November 23, 1998, the trial court adopted the Agreed Judgment Entry and declared it to be "a valid and binding contract between the parties."
 {¶ 4} According to the terms of the Agreed Judgment Entry, Giltz had until October 1, 1998, to close on the property. Therefore, at the time of the trial court's judgment in November 1998, Giltz was already in breach of the agreement. Giltz never took action to close on the property. In 1998, 2000, and 2002, the Reitzes contacted Giltz about closing the deal on the property but received no response.
 {¶ 5} Four days after the November 1998 judgment entry, the Reitzes retained Francis ("Bud") J. Soltesz, a realtor with Coldwell Banker, and listed the property for sale at the price of $900,000. Soltesz thought the price somewhat high, but testified that other properties in the area had, at this time, sold for between $800,000 and $1,000,000 and believed that they "might be able to do something" with a $900,000 listing price. No offers were received and the listing price was reduced to $695,000.
 {¶ 6} In April 2000, Ross Development Company offered to purchase the land under an option agreement for $600,000. According to the proposed terms, Ross would pay $1,000 deposit for "the exclusive right and option to purchase the property" during a 180-day option period. Thereupon, Ross could extend the option period for an additional 180 days by paying a $5,000 deposit for each 90-day extension. At any time prior to the expiration of the option period, Ross could elect to terminate the agreement and the Reitzes would return the deposit to Ross. The Reitzes counter-offered, proposing a $625,000 sale price and a nonrefundable 180-day option price of $6,000. No agreement was ever reached with Ross Development Company.
 {¶ 7} The Reitzes further reduced the listing price of their property to $495,000.
 {¶ 8} In 2002, Gordon Food Service offered to purchase the Reitzes' property for $425,000. In June 2002, the Reitzes and Gordon Food Services entered an agreement to purchase the property for $445,000, dependent upon certain contingencies including approval of the sale by Gordon Food's board of directors and the determination that there will be "adequate and sufficient * * * sanitary sewer and storm water drainage servicing the Property."
 {¶ 9} The provision regarding sewerage was significant for the following reasons. The Reitzes' property is situated in Howland Township, a few hundred feet north of the City of Niles. While the property was used for a residential purpose, a septic system adequately served its sewerage needs. As a commercial development, it would be necessary to link the property with a municipal sewer system. Although Howland Township had represented for many years that it would be extending its sewer lines down Niles Cortland Road toward Route 422, it never did so.[1]
There is evidence that Giltz and the Reitzes were aware of the sewerage issue in 1997. The problem remained unresolved during the years that the Reitzes were attempting to sell the property. In order to tap into the Niles sewer system, the Reitzes ultimately had to file an application to have their property annexed to the City of Niles. The Reiztes did so in course of their negotiations with Gordon Food. It was not until the annexation was complete and Niles guaranteed sewer availability that Gordon Food would close the deal with the Reitzes.
 {¶ 10} The sale of the Reitzes property closed in September 2003. Unlike the agreement with Giltz, the Reitzes were responsible for paying the real estate commission of $44,500 in the sale to Gordon Food. Accordingly, the Reitzes' net profit on the sale of the property was $400,500.
 {¶ 11} On July 12, 2002, the Reitzes filed suit against Giltz alleging breach of contract and seeking statutory interest, the difference between the net sale price of the property and the original contract price of $550,000, or, in the event the property could not be sold, an order to compel Giltz to complete the sale according to the terms of the contract.
 {¶ 12} The matter was heard in a bench trial on July 7, 2004, after the sale of the property to Gordon Food. On October 5, 2005, the trial court issued its judgment entry finding for the Reitzes and awarding damages in the amount of $150,000 for breach of contract and interest, at the statutory rate of ten per cent, in the amount of $271,082, for a total judgment of $421,082.
 {¶ 13} Giltz timely appeals and raises the following assignments of error.
 {¶ 14} "[1.] The Trial Court erred in rendering a verdict in favor of Appellees.
 {¶ 15} "[2.] The Trial Court erred in overruling Appellant's Motion for Directed Verdict.
 {¶ 16} "[3.] The Trial Court erred in calculating and awarding damages to Appellees.
 {¶ 17} "[4.] The Trial Court erred by not requiring Appellees to mitigate any damages they experienced.
 {¶ 18} "[5.] The Trial Court erred in awarding interest to Appellees."
 {¶ 19} Giltz' first argument under its first assignment of error is that the trial court erred in rendering judgment because the Reitzes are not the real party in interest. At trial, Daniel Reitz testified that their property is held in revocable trust, with Daniel as trustee for Mary Jane's interest and Mary Jane as trustee for Daniel's interest. Giltz' position is that, since the property was held in trust, Daniel and Mary Jane Reitz could only act as trustees with respect to the property. The Real Estate Purchase Agreement with Giltz was signed by the Reitzes in their individual capacities, not as trustees. Likewise, the Reitzes filed suit against Giltz in their individual capacities, not as trustees.
 {¶ 20} Ohio Civil Rule 17(A) provides that "[e]very action shall be prosecuted in the name of the real party in interest" and that a trustee "may sue in his name as such representative without joining with him the party for whose benefit the action is brought." "A `real party in interest' has been defined as `* * * one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefited or injured by the outcome of the case.'" Shealy v. Campbell (1985), 20 Ohio St.3d 23, 24, 20 Ohio B. 210, 485 N.E.2d 701, quoting West Clermont Edn. Assn. v.West Clermont Bd. of Edn. (1980), 67 Ohio App.2d 160, 162,426 N.E.2d 512 (internal citations omitted). In the case of a trust, the trustee is not technically the real party in interest as they hold the property for another's benefit. Under Civ.R. 17(A), the trustee is permitted to represent the beneficiary's interest in the trust property in legal actions. Phillips v. May, 11th Dist. No. 2003-G-2520, 2004-Ohio-5942, at ¶ 40 (citations omitted).
 {¶ 21} The purpose of the rule requiring actions to be prosecuted by the real party in interest "is to protect a defendant from facing a subsequent similar action brought by one not a party to the present proceeding and to ensure that any action taken to judgment will have its proper effect as res judicata." Security Trust Co. v. Gross (Dec. 16, 1985), 12th Dist. Nos. CA83-06-054, CA83-06-058, and CA83-06-069, 1985 Ohio App. LEXIS 9653, at *13, citing Prevor-Mayorsohn Carribean Inc.v. Puerto Rico Marine Management, Inc. (C.A.6 1980), 620 F.2d 1,4.
 {¶ 22} In the present case, Daniel and Mary Jane Reitz are the sole trustees and the sole beneficiaries of the trust that held title to the subject property. This court has held previously that, when the trustee and beneficiary of trust property is the same person, that person is the real party in interest regardless of their designation in the complaint as trustee. Phillips v. May, 11th Dist. No. 2003-G-2520,2004-Ohio-5942, at ¶ 41; Young v. Louisville Title Agency forN.W. Ohio, Inc. (Jan. 15, 1993), 6th Dist. No. 91WD097, 1993 Ohio App. LEXIS 66, at *13-*14. Furthermore, there is no danger that Giltz might face a subsequent similar action regarding the subject property or that trial court's judgment will not have its proper effect as res judicata.
 {¶ 23} Accordingly, the trial court did not err in allowing this case to be prosecuted by the Reitzes in their individual capacities.
 {¶ 24} Giltz' second argument under its third assignment of error is that the trial court erred by failing to apply the liquated damage clause contained in the Real Estate Purchase Agreement. Giltz refers to a portion of the contract which provides that Giltz has 120 days conduct tests on the property before closing the sale. If Giltz was not "satisfied * * * with any of the results of such tests," it was entitled to terminate the purchase agreement by giving written notice. Thereupon, the following handwritten provision was added: "In this instance, however, the Seller shall keep the $5,000 down payment anything else in this agreement to the contrary."
 {¶ 25} Where the provision of a contract is clear and unambiguous, its interpretation is a matter of law. InlandRefuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.
(1984), 15 Ohio St.3d 321, 322. The trial court found that no "applicable liquidate damages provision" existed in the parties contract. We agree.
 {¶ 26} A plain reading of the provision relied upon by Giltz demonstrates that it concerns the return of deposit money paid on an option contract, not a provision apportioning damages in the case of breach. Furthermore, as the Reitzes point out, Giltz never paid the $5,000 deposit or gave written notice that it was terminating the agreement. Cf. Gaskins v. Young, 2nd Dist. No. 20148, 2004-Ohio-2731, at ¶ 30 (holding that an earnest money provision that failed to specify a fixed amount of money to be paid "in lieu of actual damages in the event of breach of contract" did not constitute a liquidated damages provision).
 {¶ 27} Accordingly, the trial court did not err by limiting the Reitzes recovery to $5,000 in liquidated damages.
 {¶ 28} Giltz' other arguments under the first three assignments of error all challenge the trial court's award of damages to the Reitzes for breach of contract. Although Giltz raises the same arguments, the standard of review differs according to the assignment of error. Under the first and third assignments, Giltz argues generally that the trial court erred in awarding damages. Our standard of review in this context is whether the trial abused its discretion in its determination of damages. Kaufman v. Byers, 159 Ohio App.3d 238, 2004-Ohio-6346, at ¶ 37; Williams v. Kondziela, 11th Dist. No. 2002-L-190, 2004-Ohio-2077, at ¶ 19.
 {¶ 29} Under the second assignment of error, Giltz raises the issue of damages in the context of its motion for a directed verdict on this issue made at trial. The trial court may grant a duly made motion for directed verdict where, "after construing the evidence most strongly in favor of the party against whom the motion is directed, [it] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). "[W]hen there is sufficient evidence relating to [an] issue to permit reasonable minds to reach different conclusions on that issue," the motion should be denied. O'Dayv. Webb (1972), 29 Ohio St.2d 215, paragraph four of the syllabus. Therefore, a motion for directed verdict presents a question of law which is reviewed on appeal under a de novo standard of review. Id. at paragraph three of the syllabus;Chilson v. Conrad, 11th Dist. No. 2005-P-0044, 2006-Ohio-3423, at ¶ 14 (citation omitted).
 {¶ 30} "It is well established that the proper measure of damages for a breach of a real estate contract is the difference between the original contract price and the fair market value of the property at the time of breach." Williams v. Kondziela,
11th Dist. No. 2002-L-190, 2004-Ohio-2077, at ¶ 20 (citation omitted); Roesch v. Bray (1988), 46 Ohio App.3d 49, 50
(citation omitted). "[A] party seeking to recover damages must present evidence not only of the resale price, but that party must also put forth sufficient evidence that the resale price was the true indicator of the fair market value at the time of the breach." Kaufman v. Byers, 159 Ohio App.3d 238, 2004-Ohio-6346, at ¶ 39 (citation omitted).
 {¶ 31} Giltz argues that the trial court improperly calculated damages by merely taking the difference between the contract price and resale price of the property where there was no evidence that the resale price was the true indicator of the fair market value at the time of breach. Williams,
2004-Ohio-2077, at ¶ 20. Giltz further argues the evidence demonstrates that the fair market value of the Reitzes' property at the time of breach was, at the least, the contract price of $555,000. Giltz cites to Ross Development's offer to buy the property for $600,000 in 2000, and the testimony of Giltz' realtor, Peyatt, that the fair market value at the time of breach was "around $600[,000], maybe a little more." Peyatt also testified that an adjoining property, the Basile property, sold for $350,000 in April 1998 although about half the size of the Reitzes' property. Moreover, the Reitzes themselves testified that they believed the contract price of $555,000 was below the fair market value.
 {¶ 32} The Reitzes counter that the trial court is entitled to consider the resale price, when such resale is made within a reasonable time and at the highest price obtainable after the breach. Roesch, 46 Ohio App.3d at 50 (citation omitted). The Reitzes rely on the testimony of Daniel Reitz and Soltesz that the real estate market had begun "to slow down" and that the "bottom fell out" about the time of breach. The Reitzes note that Peyatt testified to a transitional market that was affected by the perceived availability of sewer connection. Prior to the fall of 1998, there was an expectation that sewerage would be available. Peyatt qualified her testimony regarding the fair market value of the Reitzes property in 1998, stating that its value could be fixed between $400,000 and $600,000. "If you take the high end [of what had been sold there in '96 and '97], their property would be worth 600. In '98 if you take the low end it may be worth 400."
 {¶ 33} Peyatt testified that, when Giltz acquired the smaller Basile property for $350,000, it was believed that sewerage would be available.
 {¶ 34} The decline in real estate prices was further reflected in Peyatt's testimony regarding the Antennucci property, a property of similar size to the Reitzes' property and located nearby. In 1997, Giltz acquired the Antennucci property for $450,000. In May 2001, after it had become evident that sewers were not going to be available in the "foreseeable future," Peyatt acquired the Antennucci property for only $270,000.
 {¶ 35} Giltz relies heavily on the evidence that Ross Development offered to purchase the property for $600,000. Giltz cites to Hussey v. Daum (May 3, 1996), 2nd Dist. No. 15434, 1996 Ohio App. LEXIS 1758, where the court of appeals overturned a lower court adopting the resale price where there had been an intervening offer to purchase for more than the resale price. The court of appeals concluded the calculation of damages was against the weight of the evidence inasmuch as the resale price "was not the highest price obtainable after the breach" in light of the intervening offer. Id. at *7. We find Hussey to be distinguishable. The situation in the present case is unique in several respects. First, the transaction in the present case involves the sale of a residential property for redevelopment for commercial use. Second, the market was unstable for a number of years due to uncertainly about sewer availability which bore directly on the marketability of the property for commercial purposes. Third, Ross Development's offer to purchase was only an offer for an option to purchase. Under the terms of Ross Development's offer, the Reitzes' property could have been taken off the market for up to a year without any firm commitment or obligation on the part of Ross Development to close the sale. Even the Second District, in a latter appeal of the Hussey
case, acknowledged that "due to the tenuous and uncertain nature of many offers to purchase real estate, an alleged intervening offer between the time of the breach and the time of the sale ordinarily would be no more than some evidence of market value."Hussey v. Daum (Dec. 28, 1998), 2nd Dist. No. CA 17148, 1998 Ohio App. LEXIS 6277, at *2.
 {¶ 36} Giltz is also incorrect that the Reitzes testimony that the fair market value of their property exceeded the purchase price of their agreement with Giltz constitutes a binding judicial admission. It is well-established in Ohio law that a property owner is competent to testify to the value of his or her property and that such testimony is sufficient to establish the value of that property. Smith v. Padgett (1987),32 Ohio St.3d 344, 347; Gaskins, 2004-Ohio-2731, at ¶ 46. The weight afforded to the testimony of a property owner is for the trier of fact to determine. Sumra v. Sumra, 2nd Dist. No. 20605, 2005-Ohio-4513, at ¶ 16; Cincinnati v. Banks (2001),143 Ohio App.3d 272, 292. Unless entered into as part of a stipulation, the trial court is not bound to adopt the Reitzes valuation of their property. Cf. Gaskins, 2004-Ohio-2731, at ¶47.
 {¶ 37} For the foregoing reasons, we agree with the Reitzes that, in light of all the evidence before the trial court, it was not an abuse of discretion to adopt the resale price of $400,000 as the fair market value for the purpose of determining damages. Although the evidence supported a range of values for the fair market value at the time of breach, $400,000 was within that range and was supported by other evidence supporting the adoption of that figure. Likewise, we hold that, since reasonable minds could have reached differing conclusions in regard to the fair market value of the property at the time of breach, the trial court properly overruled Giltz' motion for directed verdict.
 {¶ 38} Accordingly, the Reitzes "are entitled to the benefit of their bargain: the contract price less the actual resale price." Roesch, 46 Ohio App.3d at 51. The first three assignments of error are without merit.
 {¶ 39} Under the fourth assignment of error, Giltz argues the Reitzes forfeited their right to damages by failing to mitigate and the trial court erred by failing to rule in their favor.
 {¶ 40} The duty to mitigate damages, otherwise known as the doctrine of avoidable consequences, requires a plaintiff to avoid those damages resulting from a breach of contract that may be avoided "with reasonable effort and without undue risk or expense." Williams, 2004-Ohio-2077, at ¶ 21, citing TokaiFinancial Servs. v. Mathews, Gallovic, Granito Co. (Nov. 24, 1995), 11th Dist. No. 95-L-098, 1995 Ohio App. LEXIS 5163, at *6-*7. The duty "aris[es] from the cardinal principle that the damage award should put the injured party in as good a position had the contract not been breached at the least cost to the defaulting party." F. Enterprises, Inc. v. Kentucky FriedChicken Corp. (1976), 47 Ohio St.2d 154, 159-160. "The doctrine of avoidable consequences requires only reasonable, practicalcare and diligence, not extraordinary measures to avoid excessive damages." Tokai Financial, 1995 Ohio App. LEXIS 5163, at *7 (citation omitted).
 {¶ 41} Giltz asserts that the Reitzes breached their duty to mitigate damages in several instances. Initially, Giltz claims the Reitzes' listing of price of $900,000 was unreasonably high and contrary to the advice of their retained realtor, Soltesz. Giltz also claims the Reitzes breached their duty to mitigate by not accepting Ross Development's offer for $600,000, which was above the contract price negotiated with Giltz.
 {¶ 42} We hold that the trial court acted within its discretion by concluding that the Reitzes made "a reasonable effort to market the subject property so as to mitigate their damages." Although Soltesz, a professional realtor for over twenty years, deemed the initial listing price high, he considered the price workable. Soltesz and Peyatt both testified that some properties in the preceding years had sold for up to one million dollars. There is also evidence that, at the time the property was initially listed, Soltesz and/or the Reitzes believed that sewerage would be available for the property.
 {¶ 43} Soltesz testified regarding his diligent efforts to market and advertise the Reitzes' property and this testimony is not disputed. The price of the property was gradually reduced until Ross Development came forward with an offer for $600,000. Giltz maintains that the risks associated with Ross Development's offer were just as great as the risks in agreement to sell to Gordon Food and that there was no good reason for the Reitzes not to accept the offer. There were, however, significant differences between the two offers. Unlike Ross Development, Gordon Food was willing to pay nonrefundable earnest money for its option and was willing to negotiate the final sale price. As discussed above, Ross Development's offer for an option to buy did not guarantee a final sale. Gordon Food was aware of the sewerage issue and discussed the issue in its negotiations with the Reitzes. There is no evidence that Ross Development had considered this contingency in making its offer.
 {¶ 44} We also note that the Reitzes mitigated their damages by regularly contacting Giltz about the possibility of reviving the 1998 purchase agreement.
 {¶ 45} Accordingly, the record demonstrates that the Reitzes acted with reasonable, practical care and diligence in finding another buyer for their property. The fourth assignment of error is without merit.
 {¶ 46} Under the fifth and final assignment of error, Giltz argues that the trial court erred in awarding interest to the Reitzes. Under the version of R.C. 1343.03(A) in effect at time of the trial court's judgment, a judgment creditor was entitled to interest at the rate of ten per cent per annum "upon all judgments * * * for the payment of money arising out of * * * a contract."
 {¶ 47} Giltz argues that the award of interest is invalid on the grounds that the November 1998 judgment entry declaring the agreed judgment entry "a valid and binding contract" was void ab initio since it was impossible to perform, since it required Giltz to close the sale by October 1998. We disagree. The November 1998 judgment entry did not create a binding contract between the parties but merely declared the existence of such a contract as of the date of the June 1998 mediation conference.
 {¶ 48} Giltz further argues that the 1998 judgment entry cannot be the basis for an award of interest because it did not award damages, but rather ordered specific performance by the parties, which was impossible for the reason stated above. Again we disagree. The 1998 judgment entry merely declared the existence of a binding contract. The judgment entry did not address the issue of remedies for the breach of that contract, although it noted that the Reitzes "shall be entitled to collect statutory interest on any unpaid sums which may have become due" under the contract.
 {¶ 49} The fifth assignment of error is without merit.
 {¶ 50} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, awarding damages plus interest to the Reitzes for the breach of a contract for the sale of real estate is affirmed.
Rice, J., O'Toole, J., concur.
[1] According Daniel Reitz' testimony, the sewer problem involved a practical difficulty in that the Niles Cortland Road ran down the slope of a hill. In order to tap into Howland Township's sewer lines, it would have been necessary to pump the waste uphill.