[Cite as *Grexa v. Hollenbaugh*, 2014-Ohio-4746.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

TRUMBULL COUNTY, OHIO


JOHN T. GREXA,                          :        **O P I N I O N**

        Plaintiff-Appellee,            :

        - vs -                              :        **CASE NO. 2014-T-0039**

WILLIAM HOLLENBAUGH &                :
ALL OTHER TENANTS,

        Defendant-Appellant.           :


Civil Appeal from the Trumbull County Court, Central District, Case No. 2014 CVG 0093.

Judgment: Affirmed.


*George E. Gessner*, Gessner & Platt Co., L.P.A., 212 West Main Street, Cortland, OH 44410 (For Plaintiff-Appellee).

*J. Terrence Dull*, 724 Youngstown-Warren Road, Suite 11, Niles, OH 44446 (For Defendant-Appellant).


COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, William Hollenbaugh & All Other Tenants, aka William Hollobaugh, appeals from the April 30, 2014 judgment of the Trumbull County Court of Common Pleas, Central District, issuing a writ of restitution in favor of appellee, John T. Grexa, in a forcible entry and detainer action.[1] For the reasons that follow, we affirm.

----

1. The correct spelling of appellant's surname is "Hollobaugh."

{¶2}    Joseph and Sandra Toth ("the Toths") owned real estate located at 8225 Thompson-Sharpsville Road, Masury, Trumbull County, Ohio ("the property"). Appellant, and others, resided at the property for approximately nine years and paid rent to the Toths.  Appellee and his wife, Kimberly Grexa ("Kimberly"), later purchased the property from the Toths.  However, appellant never paid any rent to appellee or his wife.

{¶3}    As a result, on April 13, 2014, appellee had his brother, Robert Grexa ("Robert"), personally serve a Three-day Notice on appellant to vacate the premises for the following reasons: "Failure to Pay Rent, New Ownership."  Robert misspelled appellant's surname by writing "Hollenbaugh" instead of "Hollobaugh."  Robert gave the notice to Lolita Hershberger ("Lolita"), appellant's fiancé and an occupant of the property.  Despite receiving the notice, the occupants did not vacate the property.

{¶4}    On April 17, 2014, appellee filed a complaint in forcible entry and detainer with a claim for rent against "William Hollenbaugh & All Other Tenants."[2]  A hearing was held on April 25, 2014.

{¶5}    Appellee did not attend the hearing.  However, appellee's wife and co-owner of the property, Kimberly, and his brother, Robert, did attend and testify. Kimberly stated that appellant never entered into any agreement with her or her husband about occupying the property.  She also said that neither she nor her husband received any rent from appellant or from any other occupant.  Robert testified that he prepared and personally delivered the Three-day Notice.  Robert said he guessed how to spell appellant's last name.

---

2. This case originated in the Eastern District Court of Trumbull County.  It was later transferred to the Central District Court due to a conflict which prevented the Eastern District Court judge from hearing the matter.

{¶6} Appellant testified that he entered into a contract with the original owners of the property, the Toths. The one-page, hand-written document appellant referred to was designated as "Defendant's Exhibit A," dated February 14, 2008, and signed by appellant and Joseph Toth ("Mr. Toth"). Appellant was to pay a total of $135,000 for the property, which was described as including 8.74 acres.[3] Appellant was to pay $2,500 down with monthly payments thereafter until the balance of the total purchase price was paid in full. The last sentence Mr. Toth wrote on that document states: "This will serve as our contract until I obtain a[n] actual land contract to be signed." The document was never notarized nor recorded.

{¶7} Appellant further testified that Mr. Toth subsequently gave him another document entitled "Land Contract Installment" which was designated as "Defendant's Exhibit B." However, neither appellant nor Mr. Toth signed that document. Appellant asserts he refused to sign the contract mainly because it indicated that the Toths would transfer only 5.24 acres of land to him, instead of the original agreed upon amount of 8.74 acres. Nevertheless, appellant stated he continued making monthly payments to the Toths, paying a total of $30,600.

{¶8} Around July 2011, a dispute arose between appellant and Mr. Toth over who would pay the cost of repairs to the sewage system at the property. At that time, appellant said he stopped making payments to the Toths. As a result, on May 16, 2012, in Case No. 2012 CVG 115, Mr. Toth filed a "Complaint for Eviction and Money Damages" against appellant due to "non-payment of rent." On June 18, 2012, the

---

3. The document incorrectly lists the purchase price as $13,500. However, testimony at the hearing established that the actual agreed upon price was $135,000.

3

Eastern District Court dismissed that case as "improperly filed," determining that the parties entered into a land installment contract.[4]

{¶9} Appellant additionally testified that during his residency at the property, he had met appellee on various occasions. One encounter occurred while appellee was surveying an adjoining neighbor's property line. Another encounter took place when appellee was plowing snow from the driveway. Appellant indicated he was surprised to learn that appellee and his wife had purchased the property that appellant believed he was buying from the Toths. Appellant said he had a conversation with Mr. Toth in the fall of 2013, and that it was his understanding that the property was to be re-surveyed and the sewage system was to be repaired the following spring. However, that never occurred. Rather, appellant was served with the Three-day Notice from appellee and his wife, the "new" purchasers of the property.

{¶10} Lastly, Lolita testified she lived at the property for about five years and contributed to making some payments to the Toths when she was employed. She agreed with appellant that approximately $30,000 in payments were made. Lolita indicated she had never met with appellee or his wife. However, she did meet with appellee's brother, Robert, on one occasion, when he handed her the Three-day Notice.

{¶11} On April 30, 2014, the trial court issued a writ of restitution in favor of appellee in this forcible entry and detainer action. The court found that no land

_____

4. We note that the Central District Court in the instant case referenced that Eastern District Court case in its April 30, 2014 judgment as follows: "Finally, defendant called to the court's attention that the prior record owner of the real estate (Toth) did attempt to evict defendant from the premises in an action filed in the Trumbull County Eastern District Court, and that the judge of that court dismissed that action based upon the existence of a land installment contract, at Case No. 2012 CVG 00115E. This court has reviewed the entry in that case, and is of the opinion that this court is not barred from proceeding here, as this plaintiff [appellee] was not involved in that action and there is no evidence that he was even aware of it."

4

installment contract existed. Appellant filed a timely appeal and asserts the following three assignments of error:

**{¶12}** "[1.] The trial court committed prejudicial error in granting Appellee a writ of restitution based upon its opinion that Appellant did not have a land contract with the prior title owner of the property.

**{¶13}** "[2.] The trial court erred in awarding a writ of restitution to Appellee where the Defendant's name was improperly spelled.

**{¶14}** "[3.] The trial court erred in awarding a writ of restitution to Appellee where the Appellee failed to appear for the hearing and make himself available for cross examination by the opposing party."

**{¶15}** In his first assignment of error, appellant argues the trial court erred in granting appellee a writ of restitution based upon its opinion that appellant did not have a contract with the Toths (the prior title owners of the property). Appellant maintains the court erred in determining that the February 14, 2008 agreement did not contain all of the provisions required for a land installment contract under R.C. 5313.02.

**{¶16}** We are called upon to determine whether appellant and the Toths had a land installment contract. Upon review, and for the reasons that follow, the record reveals that no such contract exists.

**{¶17}** In its most basic form, ""[a] contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp.

5

409, 414. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dep't of Industrial Relations* (1991), 61 Ohio St.3d 366, 369 * * *.' *Kostelnik v. Helper,* 96 Ohio St.3d 1, 3-4, 2002-Ohio-2985 * * *." *Minister Farmers Cooperative Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, ¶28. (Parallel citations omitted.)

{**¶18**} Regarding land installment contracts, R.C. 5313.02 states:

{**¶19**} "(A) Every land installment contract shall be executed in duplicate, and a copy of the contract shall be provided to the vendor and the vendee. The contract shall contain at least the following provisions:

{**¶20**} "(1) The full names and then current mailing addresses of all the parties to the contract;

{**¶21**} "(2) The date when the contract was signed by each party;

{**¶22**} "(3) A legal description of the property conveyed;

{**¶23**} "(4) The contract price of the property conveyed;

{**¶24**} "(5) Any charges or fees for services that are includable in the contract separate from the contract price;

{**¶25**} "(6) The amount of the vendee's down payment;

{**¶26**} "(7) The principal balance owed, which is the sum of the items specified in divisions (A)(4) and (5) of this section less the item specified in division (A)(6) of this section;

{**¶27**} "(8) The amount and due date of each installment payment;

{**¶28**} "(9) The interest rate on the unpaid balance and the method of computing the rate;

6

**{¶29}** "(10) A statement of any encumbrances against the property conveyed;

**{¶30}** "(11) A statement requiring the vendor to deliver a general warranty deed on completion of the contract, or another deed that is available when the vendor is legally unable to deliver a general warranty deed;

**{¶31}** "(12) A provision that the vendor provide evidence of title in accordance with the prevailing custom in the area in which the property is located;

**{¶32}** "(13) A provision that, if the vendor defaults on any mortgage on the property, the vendee can pay on that mortgage and receive credit on the land installment contract;

**{¶33}** "(14) A provision that the vendor shall cause a copy of the contract to be recorded;

**{¶34}** "(15) A requirement that the vendee be responsible for the payment of taxes, assessments, and other charges against the property from the date of the contract, unless agreed to the contrary;

**{¶35}** "(16) A statement of any pending order of any public agency against the property."

**{¶36}** Appellant correctly points out that a land contract may be enforceable even if it does not strictly comply with all of the foregoing R.C. 5313.02 requirements. In fact, this court held the following in *Phillips v. May*, 11th Dist. Geauga No. 2003-G-2520, 2004-Ohio-5942, ¶21:

**{¶37}** "'Despite the mandatory language of R.C. 5313.02, it is well-established that a land contract may be held to be enforceable as between parties even though it does not strictly comply with the requirements of R.C. 5313.02.' *Gollihue v. Russo*, 152

7

Ohio App.3d 710, 714, 2003-Ohio-2663, at ¶33 * * *, citing *Real Flo Properties v. Kelly* (Dec. 17, 1999), 6th Dist. No. L-99-1099, 1999 Ohio App. LEXIS 6030, at *6 ('a document need not strictly comply with R.C. 5313.02(A) in order to be deemed an enforceable land installment contract'), and *Shimko v. Marks* (1993), 91 Ohio App.3d 458, 461-462, * * * (substantial compliance with the statutory requirements of R.C. 5313.02 was sufficient to establish a valid installment contract)." (Parallel citations omitted.)

{¶38} In this case, the record reveals a one-page, hand-written document, designated as "Defendant's Exhibit A," dated February 14, 2008, and signed by appellant and Mr. Toth. This document meets some of the R.C. 5313.02 requirements for a land installment contract, including: a date, a contract price, a down payment, and payment due dates. *See* R.C. 5313.02(A)(2), (4), (6), and (8). However, this purported land contract is not, in fact, an agreement. Rather, it is merely a statement of intent to enter into a formal land installment contract *in the future*.

{¶39} As stated, appellant was to pay a total of $135,000 for the property, which was described as including 8.74 acres. Appellant was to pay $2,500 down with monthly payments thereafter until the balance of the total purchase price was paid in full. The last sentence Mr. Toth wrote on that February 14, 2008 document states: "This will serve as our contract *until I obtain a[n] actual land contract to be signed.*" (Emphasis added.) Thus, the document on its face declares that it is not a land installment contract. Furthermore, the document was never notarized nor recorded.

{¶40} The record also reveals that Mr. Toth subsequently gave appellant another document entitled "Land Contract Installment," designated as "Defendant's

Exhibit B." This latter document further supports the fact that the former document was only a statement of intent rather than a contract. We stress again that neither appellant nor Mr. Toth signed the "Land Contract Installment." In fact, appellant testified at the hearing that he refused to sign the "Land Contract Installment" because he did not agree with its terms. Specifically, the "Land Contract Installment" indicated that the Toths would transfer only 5.24 acres of land to appellant, instead of the prior agreement of 8.74 acres. Thus, as evidenced from the "Land Contract Installment" and by appellant's own admission, there was no "meeting of the minds," an essential element required for any enforceable contract. *Meyer, supra,* at ¶28.

{¶41} Based on the facts presented, no land installment contract existed between appellant and the Toths. Thus, the trial court did not err in granting appellee a writ of restitution.

{¶42} Appellant's first assignment of error is without merit.

{¶43} In his second assignment of error, appellant contends the trial court erred in awarding a writ of restitution to appellee because appellant's name was improperly spelled.

{¶44} Appellant's brief reveals that his argument contains no citations to any authority or statute to support his position under this assignment. *See* App.R. 16(A)(7) ("[t]he appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.")

9

**{¶45}** Nevertheless, upon review, we find the trial court committed no error. As stated, although appellant's surname was misspelled ("Hollenbaugh" instead of "Hollobaugh"), he still received the Three-day Notice and a copy of the complaint. In fact, appellant attended the April 25, 2014 hearing, acknowledged he was the person named as the defendant in the complaint, and defended his position. Also, the proper spelling of appellant's last name was clarified on the record. *See* Civ.R. 60(A) ("Clerical mistakes * * * may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders.")

**{¶46}** Appellant's second assignment of error is without merit.

**{¶47}** In his third assignment of error, appellant maintains the trial court erred in awarding a writ of restitution to appellee because appellee did not attend the April 25, 2014 hearing and, thus, was not available to be cross-examined.

**{¶48}** As previously addressed, no land installment contract existed between appellant and the Toths (the original owners). Appellee and his wife, Kimberly, later purchased the property from the Toths. Thus, Kimberly is a co-owner. Appellant correctly points out that appellee did not attend the hearing. However, Kimberly did. Kimberly asserted her and her husband's interest in the property. She testified that appellant never entered into any agreement with her or her husband about occupying the property. She also said that neither she nor her husband received any rent from appellant or from any other occupant. Appellant's attorney cross-examined Kimberly.

**{¶49}** In addition, appellee's brother, Robert, testified that he prepared and personally delivered the Three-day Notice. Robert gave the notice to Lolita, appellant's

fiancé and an occupant of the property. Robert said he guessed how to spell appellant's last name. Appellant's attorney also cross-examined Robert.

{¶50} Based on the facts presented, we fail to see that appellant suffered any prejudice due to appellee's failure to attend the hearing.

{¶51} Appellant's third assignment of error is without merit.

{¶52} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas, Central District, is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

11