KAUFMAN et al., Appellees,

v.

BYERS et al., Appellants.

[Cite as *Kaufman v. Byers,* 159 Ohio App.3d 238, 2004-Ohio-6346.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 2003–G–2525.

Decided Nov. 26, 2004.

240

242

Joseph T. Svete and James R. Flaiz, for appellees.

Michael A. Robusto, for appellants.

JUDITH A. CHRISTLEY, Judge.

{¶ 1} This is an accelerated calendar appeal submitted on the briefs of the parties. This appeal arises from a contract to purchase a home that appellants, Michael Byers and Boonna Byers, entered into with appellees, Blaine and Janet Kaufman. Appellants appeal from a final judgment of the Chardon Municipal Court denying their counterclaim and awarding judgment and damages in favor

of appellees. For the reasons set forth below, we affirm the judgment of the municipal court.

{¶ 2} On January 3, 2002, appellants entered into a purchase agreement with appellees to purchase a home for $195,000. The purchase agreement referred to "[t]he property, which BUYER accepts in its 'AS IS' PRESENT PHYSICAL CONDITION." In another subsection of the document, the agreement stated, "BUYER has examined the property and agrees that the property is being purchased in its 'AS IS' PRESENT PHYSICAL CONDITION * * *." However, the word "agrees" was crossed out, and the phrases "Does Not" and "See Addendums A + B" were handwritten above the word "agrees." The agreement acknowledged receipt of a $10,000 down payment from appellants to appellees. Title was to be transferred on February 21, 2002, with possession to be delivered the following day.

{¶ 3} The agreement also acknowledged that additional terms and conditions were contained in an agency disclosure form, a residential property disclosure form, and a Veterans Administration statement. The agreement further stated that it was a "legally binding agreement upon buyer and seller" and that "[a]ll counteroffers, amendments, changes or deletions to this AGREEMENT shall be in writing and be signed by both BUYER and SELLER."

{¶ 4} After the parties entered into the agreement, several addenda were executed wherein appellees agreed to make certain repairs and improvements to the home prior to closing. All addenda expressly indicated that they supplemented the purchase agreement, dated January 3, 2002.

{¶ 5} Addendum A, dated February 9, 2002, stated that the parties agreed that appellees would make certain improvements to the home. Appellees agreed to install a full bath, consisting of a bathtub and shower combination, toilet, and vanity; install ceiling fans with lights in the living room, bedrooms, and kitchen; install exhaust fans extending from the bathrooms and kitchen to the outside; and install a dryer vent and gas, and electrical hookups in the basement. Further, appellees agreed to pay up to $3,500 to install carpet and vinyl on the basement stairs and landing, and appellants were to select the pattern and color. All parties signed the addendum.

{¶ 6} Addendum B, also dated February 9, 2002, and signed by all parties, also listed improvements that the parties agreed appellees would make to the home. According to the addendum, appellees agreed to certify that the fireplace and chimney were sound and in good repair; to complete all plumbing and electrical work, including a gas line to the kitchen stove; to complete all finish work and wall-to-wall coverings, with repairs where necessary; and to arrange for and pay for a sidewalk from the front door to the driveway. Appellees were to complete the work as weather permitted, but not later than June 1, 2002.

{¶ 7} Another addendum, designated Addendum C, dated February 9, 2002, extended the dates for closing, loan commitment, and possession. The date for loan commitment was extended to March 1, 2002; the date for closing was extended to March 15, 2002; and the date for possession was extended to March 12, 2002. All parties signed the addendum. Although it is not evident in the record, it is apparent that the dates for closing and possession were again extended beyond those given dates.

{¶ 8} Another addendum, also designated Addendum C, was signed by appellants and appellees on May 7, 2002, and May 17, 2002, respectively. According to this document, the parties agreed that appellees would grade all lawn areas, remove rocks, and plant grass; install a six-foot bathtub with surround, shower, toilet, and vanity in the downstairs bathroom; warrant that the basement would stay dry for a period of five years and that any necessary repairs would be completed within 30 days of discovery at no cost to appellants; pay for any damages caused by a leaky basement or floor; and remove the junk on the property's rear before closing.

{¶ 9} The parties do not dispute that appellants refused to go forward on the purchase agreement. When appellants refused to go forward, appellees agreed to release appellants only if they paid $10,200 for compensation. It is undisputed that appellants refused to compensate appellees, and appellees refused to tender back appellants' $10,000 down payment.

{¶ 10} Appellees entered into a purchase agreement with other buyers, almost a year later, on May 5, 2003. The house sold for $182,500. That sale price was $12,000 less than what the sale price would have been had appellants followed through with their agreement to buy the house.

{¶ 11} On July 10, 2002, appellees filed a complaint against appellants for breach of contract arising from the purchase agreement. Appellees alleged that they made improvements in the amount of $10,200, that they fulfilled all conditions of the purchase agreement, and that appellants breached the agreement by refusing to perform and by refusing to sign a release of their $10,000 deposit. Appellees prayed for judgment and damages in the amount of $14,200 plus costs and interest.

{¶ 12} Appellants timely answered and counterclaimed, alleging that appellees breached the purchase agreement. Appellants alleged that they fulfilled their obligations under the purchase agreement and that appellees breached the agreement by refusing to tender back their $10,000 down payment. Appellants prayed for judgment in that amount, plus fees and costs. Appellees timely answered the counterclaim.

{¶ 13} The magistrate conducted a hearing on May 16, 2003, but a transcript has not been made part of the record. The magistrate issued his findings of fact, conclusions of law, and recommended decision on May 23, 2003. According to the magistrate, "Mr. Byers appeared to be a sincere and honest witness. However, all the addendum items were contractual in nature (promises) and not contingencies (conditions). The failure to have the sidewalk in by June 1 (one of the very few items [appellees] failed to complete by that time), which was a $300 job held up by some very poor weather, is not a condition. Intent controls. Conditions are not favored especially where not clearly expressed. Would a $300 job be intended as a condition to enforceability of a $196,000 contract? The likely answer is not. A condition should be clearly expressed (as well as the financing contingency at line 38–42 of the contract).

{¶ 14} "A breach of a promise of a non-material term is not a defense to non-performance. [Appellees'] failure to complete the sidewalk and wallpapering are not significant items (no figure for the latter was even testified to). The carpet wasn't installed because [appellants] never designated what they wanted. [Appellants] admitted they didn't perform not because of the sidewalk, but because of a worry about the basement leaking. However, they had a five-year warranty to rely on, which obviously was intended to survive closing. Even if [appellants] were worried about the sidewalk and wallpaper merging into a closing, they could have easily sought an allowance in escrow for that, or language clarifying that these items survived closing. This they didn't do because, as aforesaid, they wanted out of the contract because of a worry over the basement."

{¶ 15} The magistrate then relied on *Roesch v. Bray* (1988), 46 Ohio App.3d 49, 545 N.E.2d 1301, to determine that appellees were entitled to costs and damages in the amount of $10,100 plus interest at ten percent per annum from June 1, 2002.

{¶ 16} No objections to the findings or the proposed decision were filed, and the municipal court adopted the magistrate's decision in a judgment entry dated July 8, 2003.

{¶ 17} From this judgment, appellants appeal and set forth the following two assignments of error:

{¶ 18} "[1.] The Court erred in holding that the installation of the driveway by the Appellees was a promise and not a condition.

{¶ 19} "[2.] The Court erred in its calculation of damages by equating the market price of the real property with the sale price to a subsequent purchaser approximately one year after the closing date specified in the parties' contract."

{¶ 20} When confronted with an issue about contract interpretation, the role of the trial court is to give effect to the intent of the parties to the

agreement. *Hamilton Ins. Services, Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898. See, also, *Preload, Inc. v. R.E. Schweitzer Constr. Co.*, 1st Dist. Nos. C–030182, C–030215, and C–030517, 2004-Ohio-2278, 2004 WL 1001881, at ¶ 5.

{¶ 21} We review a trial court's application of law to a breach-of-contract action on a de novo basis. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684; *Ohio Historical Soc. v. Gen. Maintenance & Eng. Co.* (1989), 65 Ohio App.3d 139, 146, 583 N.E.2d 340.

{¶ 22} If a contract is ambiguous and susceptible of more than one reasonable interpretation, the interpretation of the contract turns upon a question of fact. *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.* (1998), 129 Ohio App.3d 45, 55, 716 N.E.2d 1201. The trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d. 77, 80, 10 OBR 408, 461 N.E.2d 1273. Accordingly, we must indulge every reasonable presumption in favor of a trial court's judgment and its underlying findings of fact, and if the evidence is susceptible of more than one interpretation, we must defer to the trial court's credibility determinations. Id. It follows that when a contract is ambiguous, the trial court's interpretation should not be overturned on appeal absent a showing that the court abused its discretion. *Ohio Historical Soc.*, 65 Ohio App.3d at 146–147, 583 N.E.2d 340.

{¶ 23} We also note that Civ.R. 53(E) imposes an obligation upon a party to make timely, specific objections in writing to the trial court, identifying an error of fact or law in the magistrate's decision. Therefore, any party is ordinarily " 'barred from raising any error on appeal pertaining to a trial court's adoption of any finding of fact or conclusion of law by a magistrate unless that party timely objected to that finding or conclusion as required under the rule.' " *Howard v. Norman's Auto Sales*, 10th Dist. No. 02AP–1001, 2003-Ohio-2834, 2003 WL 21267261, at ¶ 21, quoting *McLaughlin v. OhioHealth Corp.*, 10th Dist. No. 02AP–492, 2002-Ohio-6836, 2002 WL 31771237, citing *State ex rel. Booher v. Honda of Am. Mfg., Inc.* (2000), 88 Ohio St.3d 52, 53–54, 723 N.E.2d 571. See, also, *Schriefer v. Schriefer*, 11th Dist. No. 2003–L–040, 2004-Ohio-2206, 2004 WL 937315, at ¶ 8; *Haas v. Haas* (Dec. 31, 1997), 11th Dist. No. 96–G–2034, 1997 WL 835077, at * 5. When a party fails to object to the magistrate's decision, the trial court may refuse to adopt the decision only if "there is an error of law or other defect" on the face of the decision. Civ.R. 53(E)(4)(a).

{¶ 24} In their first assignment of error, appellants argue that the municipal court erred by holding that the installation of a driveway and sidewalk

by appellees was a promise and not a condition. This assignment is not well taken.

{¶ 25} The magistrate issued his findings, conclusions, and recommendations on May 23, 2003, and appellants failed to object to those findings, conclusions, and recommendations. In a judgment entry dated July 8, 2003, the municipal court adopted the magistrate's decision in its entirety, denied appellants' counterclaim, and awarded judgment and damages in favor of appellees. Pursuant to Civ.R. 53(E), appellants are barred from raising this assignment on appeal because they failed to object to the magistrate's findings of fact and conclusions of law.

{¶ 26} Despite this, an analysis of the merits of appellants' argument also reveals that the assignment is without merit. We first note that the addenda are not barred by the parol evidence rule. "The parol evidence rule is a rule of substantive law that prohibits parties to a contract from later contradicting the express terms of the contract with evidence of other alleged or actual agreements." *Evilsizor v. Becraft & Sons Gen. Contractors, Ltd.*, 156 Ohio App.3d 474, 2004-Ohio-1306, 806 N.E.2d 614, at ¶ 12, citing *Brantley Venture Partners II, L.P. v. Dauphin Deposit Bank & Trust Co.* (N.D.Ohio 1998), 7 F.Supp.2d 936. See, also, *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 734 N.E.2d 782. The addenda in the instant matter contain subsequent promises and fall outside the parol evidence rule because they are writings made after the principal contract. See, e.g., *Wolfson v. Euclid Ave. Assoc.* (Mar. 20, 1997), 8th Dist. No. 70779, 1997 WL 127203, at * 3, citing *Am. Gen. Fin. v. Beemer* (1991), 73 Ohio App.3d 684, 687, 598 N.E.2d 144.

{¶ 27} We also note that "[a]n addendum to the original contract does not create a new contract." *Miles v. Realty One, Inc.* (May 9, 1996), 8th Dist. No. 69506, 1996 WL 239911 at * 2, citing *Smith v. Denihan* (1990), 63 Ohio App.3d 559, 568, 579 N.E.2d 527; *Roth Realty, Inc. v. Schenck* (Apr. 21, 1981), 2d Dist. No. 7005, 1981 WL 2773. Further, to prove the existence of a contract, a plaintiff must demonstrate the existence of an offer, acceptance, and consideration. See, e.g., *Episcopal Retirement Homes, Inc. v. Ohio Dept of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.

{¶ 28} A review of the law reveals that the modifications as outlined in the addenda were clearly promises rather than conditions of performance. "As a general rule, 'stipulations in an agreement are not to be construed as conditions precedent unless such construction is required by clear, unambiguous language; and particularly so where a forfeiture would be involved or inequitable consequences would result.'" *Provident Life & Acc. Ins. Co. v. Nassif* (C.A.6, 2000), 221 F.3d 1335, unpublished opinion, 2000 WL 924589, at * 3, quoting *Alpha Beta Food Markets v. Retail Clerks Union Local 770* (1955), 45 Cal.2d 764, 771, 291

P.2d 433. See, also, *Bernard v. Las Americas Communications* (C.A.2, 1996), 84 F.3d 103, 108. Accordingly, when a condition precedent exists, performance by one party at the time given by the contract is essential to enable him to require the counterperformance of the other party. See, e.g., *Arnhold v. Ocean Atlantic Woodland Corp.* (C.A.7, 2002), 284 F.3d 693, 700.

{¶ 29} An entire contract must be considered when determining whether a condition precedent exists. *Altman–Coady Co. v. Mercy Hosp. Assn.* (Aug. 4, 1981), 10th Dist. No. 81AP–95, 1981 WL 3387 at * 2. The general rule is that " '[w]hether a provision in a contract constitutes a condition precedent * * * is a question of intent; and the intention will be ascertained by considering the language not only of the particular provision, but of the whole contract and its subject-matter.' " Id., quoting *Mumaw v. Ins. Co.* (1917), 97 Ohio St. 1, 119 N.E. 132, paragraph two of the syllabus. See, also, *Serand Corp. v. Owning the Realty, Inc.* (Nov. 1, 1995), 1st Dist. No. C–941010, 1995 WL 653846, at * 2–3, citing *Mumaw.*

{¶ 30} When possible, courts should construe promises in a bilateral contract as mutually dependent and concurrent, rather than one promise as a condition precedent to the other. *Nassif,* 2000 WL 924589, at * 3. When promises in a bilateral contract are mutually dependent and concurrent, a party's promises are constructive conditions to the other party's performance, and we apply the doctrine of substantial performance. See, e.g., *Wakefield v. N. Telecom, Inc.* (C.A.2, 1985), 769 F.2d 109, 113.

{¶ 31} "Under [the doctrine of substantial performance], 'if one party's performance is a constructive condition of the other party's duty, only "substantial" performance is required of the first party before he can recover under the contract.' " Id. at 113, quoting Farnsworth, Contracts (1982) 590, Section 8.12. In other words, "where a contract is made for an agreed exchange of two performances, one of which is to be rendered first, substantial performance rather than exact, strict or literal performance by the first party of the terms of the contract is adequate to entitle the party to recover on it." *Brown–Marx Assoc., Ltd. v. Emigrant Sav. Bank* (C.A.11, 1983), 703 F.2d 1361, 1367. See, also, *Bernard,* 84 F.3d at 108.

{¶ 32} "The considerations in determining whether performance is substantial are those listed in [section] 241 for determining whether a failure is material." Restatement of the Law 2d, Contracts (1979), Section 237, Comment d. The question of whether a condition is a material part of a bargain is a question of fact that depends primarily on the intent of the parties. Id., Section 227, Comment b. See, also, *Concrete Designers, Inc. v. Demmler* (Dec. 28, 1995), 10th Dist. Nos. 95APE06–722, 95APE06–723, and 95APE06–821, 1995 WL

765170, at * 3–4; *Clarke v. Hartley* (1982), 7 Ohio App.3d 147, 149, 7 OBR 190, 454 N.E.2d 1322.

{¶ 33} In the instant matter, there existed no clear and unambiguous language indicating that the improvements promised by appellees constituted a condition precedent to appellants' purchase of the home. See, e.g., *Nassif*, 2000 WL 924589 at * 3. It is apparent that the original purchase agreement existed with no conditions precedent, and the addenda merely outlined improvements appellees agreed to perform as part of the contract. Further, there exists no evidence in the record demonstrating that any consideration was provided in exchange for the promises contained within the addenda. Thus, the addenda clearly contained promises, and we turn to the doctrine of substantial performance to determine which party breached the contract.

{¶ 34} Appellants can be held in breach of the purchase agreement only if appellees substantially performed on the contract. As stated, "[t]he considerations in determining whether performance is substantial are those listed in [section] 241 for determining whether a failure is material." Restatement of the Law 2d, Contracts (1979), Section 237, Comment d. Thus, the issue turns on whether the stipulations in the addenda requiring appellees to install a sidewalk and repair the wallpaper were material parts of the purchase agreement. This is a question of fact, and we review the municipal court's decision for an abuse of discretion. See, e.g., id., Section 227, Comment b; *Ohio Historical Soc.* 65 Ohio App.3d at 146–147, 583 N.E.2d 340.

{¶ 35} We have not been provided a transcript of the hearing, and thus we must follow *Seasons Coal* and indulge all the municipal court's impressions and determinations of credibility. The municipal court determined that these improvements were not material to the purchase agreement, and we cannot conclude that the municipal court abused its discretion. Therefore, appellees substantially performed on the purchase agreement, and appellants breached the agreement by failing to go forward with the purchase of the home. Accordingly, appellants' first assignment of error is without merit.

{¶ 36} In the second assignment of error, appellants argue that the municipal court erred by calculating damages by equating the market price of the property at the time of breach to the sale price of the property as established by a subsequent purchase a year later. Appellants put forth a lengthy exposition as to why they would like us to believe that the municipal court's reliance on *Roesch*, 46 Ohio App.3d 49, 545 N.E.2d 1301, was misplaced. Specifically, appellants assert that the market conditions that led the *Roesch* court to accept the actual resale price as determinative of the market value of the home are not present in the case sub judice. This assignment is without merit.

{¶ 37} A reviewing court generally will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. *Williams v. Kondziela,* 11th Dist. No. 2002–L–190, 2004-Ohio-2077, 2004 WL 877727, at ¶ 19, citing *Roberts v. United States Fid. & Guar. Co.* (1996), 75 Ohio St.3d 630, 634, 665 N.E.2d 664. "Abuse of discretion" implies that the court exhibited an unreasonable, arbitrary, or unconscionable attitude in rendering its judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 38} As we noted under appellants' first assignment of error, appellants failed to object to the magistrate's findings, conclusions, and recommendations. Pursuant to Civ.R. 53(E), appellants are barred from raising this assignment on appeal unless an error exists on the face of the magistrate's decision. The face of the magistrate's decision reveals no error.

{¶ 39} "It is well-established that the proper measure of damages for a breach of real estate contract is the difference between the original contract price and the fair market value of the property at the time of the breach." *Williams,* 2004-Ohio-2077, at ¶ 20, citing *Roth v. Habansky,* 8th Dist. No. 82027, 2003-Ohio-5378, 2003 WL 22309508, at ¶ 26. See, also, *Loft v. Sibcy–Cline Realtors* (Dec. 13, 1989), 1st Dist. No. C–880446, 1989 WL 149667, at * 3–4; *Roesch,* 46 Ohio App.3d at 50, 545 N.E.2d 1301. Thus, a party seeking to recover damages must show not only the resale price, but also that the resale price was the true indicator of the fair market value at the time of the breach. *Peterman v. Dimoski,* 1st Dist. No. C–020116, 2002-Ohio-7337, 2002 WL 31894859, at ¶ 4. See, also, *Williams,* 2004-Ohio-2077, at ¶ 20.

{¶ 40} The magistrate stated that the municipal court had adopted the reasoning set forth in *Roesch* and that the court thus calculates damages simply as the difference between the contract price and the fair market value of the property at the time of the breach. The magistrate appeared to have followed this reasoning alone when calculating damages owed to appellees.

{¶ 41} Arguably, the magistrate's statement of law may be an oversimplification. Any damage calculation must also rely on evidence demonstrating that the resale price was a true indicator of the fair market value at the time of the breach. See, e.g., *Peterman,* 2002-Ohio-7337, at ¶ 4; *Williams,* 2004-Ohio-2077, at ¶ 20. Accordingly, to determine the accuracy of the magistrate's statement, we must look to the record and to any evidence as to whether the resale price was a true indicator of the fair market value of the home at the time of the breach.

{¶ 42} No transcript of the hearing, however, has been made part of the record. We are thus unable to determine whether appellees presented evidence

that the resale price was a true indicator of the fair market value at the time of the breach or whether appellants presented evidence that the resale price was not a true indicator of the fair market value at that time. Therefore, we cannot conclude that the magistrate abused his discretion.

{¶ 43} Because this conclusion required us to consider the state of the record, it follows that there exists no error on the face of the magistrate's decision. Pursuant to Civ.R. 53(E), appellants waived any error on appeal because they failed to object to the magistrate's findings of fact and conclusions of law. Appellants' second assignment of error is without merit.

{¶ 44} In conclusion, appellants' first and second assignments of error are not well taken, and we hereby affirm the judgment of the municipal court.

Judgment affirmed.

DONALD R. FORD, P.J., and WILLIAM M. O'NEILL, J., concur.