[Cite as *Sylvester v. User Friendly Phone Book*, 2011-Ohio-6610.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |  |
|---|---|---|
| | : | JUDGES: |
| TONY SYLVESTER | : | W. Scott Gwin, P.J. |
| | : | Julie A. Edwards, J. |
| Plaintiff-Appellee | : | Patricia A. Delaney, J. |
| | : | |
| -vs- | : | Case No. 2010CA00327 |
| | : | |
| | : | |
| USER FRIENDLY PHONE BOOK | : | O P I N I O N |
| Defendant-Appellant | | |



| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from Stark County Court of Common Pleas Case No. 2008CV04721 |
| JUDGMENT: | Affirmed In Part and Reversed and Remanded In Part |
| DATE OF JUDGMENT ENTRY: | December 19, 2011 |
| APPEARANCES: | |


| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| DOUGLAS C. BOND | CHARLES D. HALL, III |
| Morello & Bond, Ltd. | Hall Law Firm |
| 700 Courtyard Centre | 610 Market Avenue North |
| 116 Cleveland Avenue, N.W. | Canton, Ohio 44702 |
| Canton, Ohio 44702 | |

*Edwards, J.*

{¶1} Defendant-appellant, David Mayfield, Jr., appeals from the November 2, 2010, Judgment Entry of the Stark County Court of Common Pleas.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} Appellant David Mayfield, Jr. and appellee Tony Sylvester are both bail bondsmen. Appellant's agency is BDM Bail Bonds while appellee's is Sly Bail Bonds. As bail bondmen, they are licensed through the Ohio Department of Insurance and post bonds, through a surety company, for individuals who are being held in jail to ensure that such individuals appear in court for future hearings. As a general rule, a bail bondsman receives 10% of the surety amount as a fee. A bail bondsman, as a general agent, will typically have other bail bondsmen working for him or her as subagents. The subagents actually write or execute the bonds on the agent's behalf by writing the bond and filing it with the court.

{¶3} Appellee Tony Sylvester was a subagent who worked for appellant as an independent contractor. In September of 2008, appellee told appellant that he was terminating his subagent relationship with appellant. On November 7, 2008, appellee filed a complaint against appellant and User-Friendly Phone Book, LLC. Appellee, in his complaint, alleged, in part, that appellant had used appellee's image in appellant's telephone directory advertisement. On January 15, 2009, User-Friendly Phone Book, LLC filed an answer and a cross-claim against appellant.

{¶4} Thereafter, on August 20, 2009, User-Friendly Phone Book, LLC dismissed its cross-claim against appellant without prejudice. On the same date, appellee dismissed his claim against User-Friendly Phone Book, LLC with prejudice.

**{¶5}** Subsequently, the parties to this appeal entered into a settlement and an Agreed Entry dismissing the case with prejudice was filed on October 22, 2009. The Settlement Agreement and Mutual Release signed by the parties states, in relevant part, as follows:

**{¶6}** "3. Although Mayfield and Sylvester will still compete with each other in the bail bond market place, each shall do so in the spirit of professionalism, fairplay, and adherence to applicable law.

**{¶7}** "4. Subject to all of the provisions in this paragraph, and except in any situation in which it would present a conflict of interest, Sylvester shall be the exclusive real bond subagent for BDM Bail Bonds in the following counties in the State of Ohio: Stark, Portage, and Summit.  The exclusive agency provided for in this paragraph shall be limited to an initial term of thirty-six (36) months starting on the date this agreement is entered into.  Subsequent terms of thirty-six (36) months each shall be at the exclusive option of Mayfield.

**{¶8}** "5. Mayfield is permitted to write a (sic) bonds as the general agent in the following counties in the State of Ohio: Stark, Portage, and Summit so long as Sylvester is the exclusive subagent for Mayfield in said counties.

**{¶9}** "6. In the event that Mayfield contacts Sylvester to write a bond in Stark, Portage or Summit counties, and Sylvester is unable or unwilling to write said bond then Mayfield is permitted to contact another subagent to write said bond.

**{¶10}** "7. In the event that Mayfield and Sylvester receive a call regarding the writing of bail on the same person, such contract shall be by Mayfield acting as the underwriter/general agent.…

**{¶11}** "22. No breach of any provision of this Agreement shall be deemed waived unless it is waived in writing. Waiver of any one breach shall not be deemed a waiver of any breach of the same or any other provision of this Agreement."

**{¶12}** The Settlement Agreement further provides that if either party brought an action to enforce the Agreement or obtain damages for breach of the same, the prevailing party would be entitled to an award of attorney's fees and costs.

**{¶13}** Appellee signed the Settlement Agreement on October 19, 2009 and appellant on October 27, 2009.

**{¶14}** Appellee, on March 12, 2010, filed a Motion for Contempt against appellant. Appellee, in his motion, alleged that appellant had breached the terms of the Settlement Agreement because either appellant or his subagent had posted bonds in cases in Stark County without offering appellee the opportunity to do so. Appellee argued that, pursuant to the terms of the Settlement Agreement, he was to be the exclusive subagent for all bonds posted by appellant in Stark, Summit and Portage Counties. A summons was issued and appellant was ordered to appear on April 19, 2010. After appellant failed to appear, a capias was issued for his arrest. Pursuant to a Judgment Entry filed on June 3, 2010, the trial court cancelled the capias warrant and ordered appellant to appear on June 14, 2010 to show cause why he should not be found in contempt.

**{¶15}** On June 14, 2010, appellant filed a Motion for Relief from Judgment pursuant to Civ.R. 60(B)(3) and (5). As memorialized in an Order filed on June 15, 2010, the trial court cancelled the June 14, 2010 hearing.

{¶16} On August 4, 2010, appellant filed a motion, in the alternative, seeking specific performance of the Settlement Agreement. On August 25, 2010, appellant filed a Motion for Judgment on the Pleadings pursuant to Civ.R.12(C).

{¶17} Thereafter, the matter was tried to the court on September 10, 2010. At the hearing, appellee testified that appellant had violated the terms of the Settlement Agreement by using other people besides appellee, as subagents to execute various bonds in Stark, Summit and Portage counties. Appellee admitted into evidence Exhibit 3 which was a list of bonding powers that were issued to appellant by Allegheny Insurance Company and that were executed in Ohio by appellant. Appellee testified that he received such list from the insurance company. Appellee also introduced Exhibit 4 which was a list of bonds that were issued to appellant and returned by appellant that were written in Portage, Stark and Summit counties which were not disclosed by appellant. Appellee testified that Exhibit 4 was produced by crosschecking the names on Exhibit 3 with online court dockets in such counties. Appellee testified that he went online and looked at court dockets in the counties to determine what bonds were written by appellant.

{¶18} Exhibit 5 also was introduced at the hearing. Testimony was adduced that Exhibit 5 was a list that appellant provided as part of discovery. Such list represents a listing of the bond powers issued to appellant by Allegheny Insurance and returned by appellant as executed or written in Stark, Summit and Portage counties. The following testimony was adduced when appellee was asked about the exhibits:

{¶19} "A. Exhibit 5 is a list that was sent from Mr. Mayfield to us in response to discovery requests.  This is a list of powers that he compiled along with, I believe, what looks to be a copy of the original bail - - actual bonding powers, I'm sorry.

{¶20} "Q. What he was ordered to provide?

{¶21} "A. Correct.

{¶22} "Q. Now, the relationship of Exhibit 5 to Exhibit 3, can you explain that to the Court?

{¶23} "A. Exhibit 3 is every power that was executed in the State of Ohio. Exhibit 3 - - or Exhibit 5 was supposed to be a more specific breakdown of the powers written in the specific three counties in question; Stark, Summit, Portage.

{¶24} "Q. And Exhibit 4?

{¶25} "A. Exhibit 4 are powers that were found to be written in those three counties that were not on Exhibit 5.

{¶26} "Q. So Exhibit 5 would have been complete if it had included the actual bonding powers or reference to those bonds on Exhibit 4?

{¶27} "A. Had it included Exhibit 4, yes.

{¶28} "Q. Now, in terms of the amount of bonds written, okay, Exhibit 5 represents the bonds that Dave Mayfield has disclosed that were written in Stark, Summit, Portage Counties since the date of the agreement, correct?

{¶29} "A. Correct."  Transcript at 20-21.

{¶30} Appellee testified that the face amount of the bonds that appellant disclosed that he had written in the above three counties since the date of the Settlement Agreement was $2,473,250 and that a bail bondsman would receive 10% of

such amount, or $247,325.00. According to appellee, pursuant to the parties' agreement, appellee was entitled to 30% of the premiums collected, or "about 90,000." Transcript at 22.

**{¶31}** Appellee further testified that the face value of the non-disclosed bonds on Exhibit 4 was $819,000.00 and that the premium to the bail bondsman would have been a little over $81,000.00. Appellee testified that he would have received 30% of such figure. When asked, appellee testified that while he was supposed to write the bonds listed on Exhibits 3 or 4, he did not do so. He testified that he was supposed to be the sole bail bond subagent for appellant "in which calls that originated through his agency from Stark, Portage and Summit County were to be written by me." Transcript at 23-24.

**{¶32}** Appellee testified that because appellant had other subagents write bonds in the three counties in violation of the parties' Settlement Agreement, he was financially damaged. He testified that he should have received 30% of the 10% premium on the $2,473,250.00 collected by appellant as well as 30% of the 10% premium on the $819,000.00.

**{¶33}** On cross-examination, appellee testified that his claim for damages was based on the Settlement Agreement. When asked, appellee testified that the parties' agreement provided that the subagent's fee would be 30% of the total amount collected rather than 30% of the face value of the executed bonds. Appellee testified that he had taken less than 10% in the past and that he had been stiffed before by people who did not pay the entire 10%. He further admitted that it was a regular practice of appellant's to accept less than 10% as payment in full on a bond. When asked, appellee testified that he had never audited or requested, either directly or through his attorney, for

appellant to demonstrate the amount of moneys actually collected on bonds in Stark, Portage or Summit County.

{¶34} Tatiana X testified that she was employed by appellant as an office manager and also an agent and notary. She testified that appellant did business under his own name and also Dave Mayfield dba Mr. Bail. She testified that she prepared Exhibit 5 and that the same showed bonds that were issued in Stark, Portage and Summit counties between August 22, 2009, and the end of June of 2010. She testified that there was an overlap between Exhibit 5 and Exhibit 4 and that one bond was contained on both lists. She further testified that, due to the economy, they collected an average of 3.8% per client as opposed to 10% in premiums and that sometimes they set up payment plans for clients. The following is an excerpt from her testimony:

{¶35} "Q. Since August of 2008, when you started learning the ropes with Mr. Mayfield, up until present, including your full-time from January of 2009 until present, how frequently does BDM or - - collect the full 10 percent premium when a bond is executed?

{¶36} "A. How frequently?  I would say maybe a couple times a year, and that's because if a client can pay the full amount, they're most likely going to post it themselves because they would need a bondsman and they could get most of that back after their family or friend went to court.  They usually go through a bondsman when they can't afford that 10 percent.

{¶37} "Q. All right.  And during the time that you've been in this bond - - bail bond industry, at least in your experience working under Mayfield, how often do - - does

Mayfield, BDM, or you, as Queen of Bail, accept less than 10 percent as payment in full for an executed bond?

**{¶38}** "A. About 98.5 percent of the time." Transcript at 129.

**{¶39}** Kristian Thomas testified that she knew appellee, his wife and appellant and also knew Tatiana X. She testified that she heard appellee's wife talking about Big Dave, Big Dave Mayfield and Dave Mayfield and that they were all the same.

**{¶40}** At the trial, appellant testified that he did business under various names including Mr. Bail, Virtual Jail, LLC, and BDM Bail Bonds. Appellant admitted that he terminated appellee's relationship with Allegheny Insurance Company on May 14, 2010, after being contacted by Seneca Insurance in December asking what kind of agent appellee was. Appellant testified that he told Seneca's representative that he had a contract with appellee and that appellee was supposed to become an underwriter for him. Appellant testified that he understood that appellee was switching underwriters and was not going to write for Allegheny, and that he did not care to contact appellee. Appellant testified that he attempted to become an underwriter for appellee's agency, but that appellee had failed to provide all of the information necessary. According to appellant, appellee failed to provide him with the entire subagent producer's application that was required by BDM Bailbonds and mandatory by the Ohio Department of Insurance to sign on as appellee's agent.

**{¶41}** Appellant testified that he rarely collected the 10% premium and that neither appellee nor his counsel had ever requested information from him as to the exact amount of premiums collected on any of the bonds.

{¶42} Pursuant to a Judgment Entry filed on November 2, 2010, the trial court granted appellee judgment against appellant in the amount of $49,000.00. The trial court found that appellant had violated the Settlement Agreement by not using appellee as his exclusive subagent for Stark, Portage and Summit counties. The trial court also found appellant in contempt of court and sentenced him to 30 days in jail with the condition that he could purge his contempt by paying appellee's attorney's fees within thirty (30) days. The trial court also overruled appellant's motion for relief from judgment pursuant to Civ.R. 60(B) and his motion for specific performance. Finally, the trial court overruled appellant's motion for judgment on the pleadings.

{¶43} Appellant now raises the following assignments of error on appeal:

{¶44} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT – DEFENDANT MAYFIELD WHEN IT CONCLUDED AS A MATTER OF LAW THAT APPELLEE – PLAINTIFF SYLVESTER DID NOT BREACH THE SETTLEMENT AGREEMENT AND THAT DEFENDANT APPELLANT MAYFIELD WAS NOT ENTITLED TO RELIEF FROM JUDGMENT PURSUANT TO ORCP 60(B).

{¶45} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT – DEFENDANT MAYFIELD IN ITS CALCULATION OF MONETARY DAMAGES AWARDED TO APPELLEE – PLAINTIFF SYLVESTER.

{¶46} "III. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT – DEFENDANT MAYFIELD WHEN IT CONCLUDED AS A MATTER OF LAW THAT APPELLANT – DEFENDANT MAYFIELD WAS IN CONTEMPT OF COURT.

**{¶47}** "IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT – DEFENDANT MAYFIELD WHEN IT IMPOSED A SENTENCE OF IMPRISONMENT FOR A FINDING OF A 'CIVIL' CONTEMPT."

I

**{¶48}** Appellant, in his first assignment of error, argues that the trial court erred in overruling appellant's motion for relief from judgment pursuant to Civ.R. 60(B)(3) and (5). We disagree.

**{¶49}** A motion for relief from judgment under Civ.R. 60(B) lies within the trial court's sound discretion. *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 514 N.E.2d 1122. In order to find abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶50}** Civ.R. 60 *Relief from Judgment or Order,* provides

**{¶51}** "* * *

**{¶52}** "(B) *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud; etc.*

**{¶53}** "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based

has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

**{¶54}** "The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules."

**{¶55}** To prevail on a motion to vacate a judgment pursuant to Civ. R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment. *GTE Automatic Electric Company, Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus.

**{¶56}** A Civ.R. 60(B) motion cannot be used to obtain relief from a settlement agreement entered into by the parties to an action. See *Bolen v. Young* (1982), 8 Ohio App.3d 36, 455 N.E.2d 1316, and *Bolster v. C & M Services, Inc.* (1994), 93 Ohio App.3d 523, 639 N.E.2d 136 (holding a party cannot use a Civ.R. 60[B] motion when an extrajudicial settlement agreement is breached; instead, a new action for breach of contract must be filed). In the case sub judice, the October 2009 Settlement Agreement was never filed in the trial court record.

{¶57} Appellant, in his motion for relief pursuant to Civ.R. 60(B), sought relief from the trial court's October 22, 2009, Agreed Judgment Entry dismissing the claims between appellant and appellee with prejudice. Appellant maintained that he was entitled to have the same vacated due to appellee's fraud, misrepresentation or other misconduct and for other equitable reasons justifying relief from judgment.

{¶58} However, as is stated above, in order to be entitled to relief under Civ.R. 60(B), appellant, as movant, was required to demonstrate that he had a meritorious defense to present if relief is granted. The underlying complaint in the case sub judice, alleged, in part, that appellant had used appellee's image in appellant's telephone directory advertisement after appellee had terminated his relationship with appellant. Appellant was, therefore, required to show that he had a meritorious defense to such claim. However, in his 60(B) motion, appellant failed to state or allege a meritorious claim or defense to such claim. Rather, appellant in his motion alleged that appellee had breached the parties' Settlement Agreement by, among other matters, failing to return the completed subproducer application that is required by BDM Bail Bonds and mandatory by Allegheny and the Ohio Department of Insurance to sign on as appellant's subagent. Appellant also alleged that appellee breached the terms of the Settlement Agreement by refusing to register with the State of Ohio as appellant's general agent, and failing to provide documentation to continue as either a subagent or a general agent with appellant and Allegheny.

{¶59} We find, therefore, that the trial court did not err in overruling appellant's Civ.R. 60(B) motion.

{¶60} Based on the foregoing, appellant's first assignment of error is overruled.

II

{¶61} Appellant, in his second assignment of error, argues that the trial court erred in its calculation of money damages awarded to appellee. We agree.

{¶62} A reviewing court will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. *Kaufman v. Byers,* 159 Ohio App.3d 238, 2004-Ohio-6346, 823 N.E.2d 520, at ¶ 37. In order to find abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶63} In the case sub judice, the trial court awarded damages to appellee in the amount of $49,000.00. The trial court arrived at such figure by taking the face value of the bonds listed on Exhibit 5, which was $2,473,250.00, along with the $819,000.00 in non-disclosed bonds represented by Exhibit 4. While R.C. 3905.93 provides that a bail bondsman must charge the premium rate filed and approved by the Ohio Superintendence of Insurance and testimony was adduced that such rate was 10% of the face value of the bond, the trial court did not apply the 10%. Rather, the trial court applied a rate of 5%. In so doing, the court, in its Judgment Entry, stated, in relevant part, as follows:

{¶64} "3. O.R.C. Section 3905.93 mandates that a bail bond agent must charge the premium rate filed with and approved by the superintendent of insurance. At all relevant times hereto that rate in Ohio is and was 10% of the face amount of the bond. This is as Sylvester established and claims that Mayfield attempted to evade.

{¶65} "4. However, this is contradicted by Sylvester's own admission that:

{¶66} "A) they regularly accepted less than a 10% fee;

{¶67} "B) sometimes they 'got stiffed' and didn't obtain full payment; and

{¶68} "C) it was a regular practice to take less than 10% of the bond….

{¶69} "7. Due to the contradictions in the formulas used to compute the premium for damages, the court has factored in the statute rate of 10% and Mayfield's claim of 3.8%.

{¶70} "8. Based on the testimony of the parties and a review of their exhibits and business practices, the Court feels a rate of 5% is fair, reasonable and in accordance with Mayfield's business practices."

{¶71} Applying 5% to $3,292,250.00, (total face value of the bonds in Exhibits 4 and 5) one arrives at a figure of $164,612.50.

{¶72} The trial court then awarded appellee 30% of the $164,612.50 as damages.[1]

{¶73} However, the Settlement Agreement signed by the parties specifically and unambiguously states that the "subagent's fee shall be thirty percent (30%) of the total amount collected." (Emphasis added). The trial court did not apply such formula in determining appellee's monetary damages. We find, therefore, that the trial court erred in calculating damages.

{¶74} Appellant's second assignment of error is, therefore, sustained.

III, IV

{¶75} Appellant, in his third assignment of error, argues that the trial court erred when it held that appellant was in contempt of court. In his fourth assignment of error,

---

[1] While the trial court awarded appellee $49,000.00 in damages, 5% of $164,612.50 is $49,383.75.

appellant contends that the trial court erred when it sentenced appellant to jail for contempt.

**{¶76}** In *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus, the Ohio Supreme Court defined "contempt" as "* * * disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." It is necessary to establish a valid court order, knowledge of the order and a violation of the order. *Arthur Young & Co. v. Kelly* (1990), 68 Ohio App.3d 287, 295, 588 N.E.2d 233.

**{¶77}** On review, an appellate court will not reverse a finding of contempt by a trial court absent a showing of an abuse of discretion. *Willis v. Willis,* 149 Ohio App.3d 50, 66, 2002-Ohio-3716, 775 N.E.2d 878, ¶ 59. In order to show an abuse of discretion, an appellant must show the decision of the trial court was arbitrary, unreasonable or unconscionable and not merely an error of law or judgment. *Blakemore*, supra.

**{¶78}** In the case sub judice, an Agreed Judgment Entry signed by counsel and the trial court was filed. The Judgment Entry indicated that the parties had settled their claims and dismissed the claims between appellant and appellee with prejudice. The Agreed Judgment Entry further stated that "in consideration of the dismissal of all claims with prejudice, the parties had entered into a settlement agreement which shall be made part of this order."

**{¶79}** Appellee, on March 12, 2010, filed a motion for contempt against appellant, alleging that appellant had violated the terms of the October of 2009 Settlement Agreement. The October of 2009 Settlement Agreement, however, was

never filed in the trial court and was never made an order of the court.[2] Because there was no court order requiring appellant to comply with the terms of the Settlement Agreement, we find that appellant could not be found in contempt for violating the same.

**{¶80}** Appellant's third assignment of error is, therefore, sustained. Appellant's fourth assignment of error is, therefore, moot.

**{¶81}** Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed and remanded in part.

By: Edwards, J.

Gwin, P.J. and

Delaney, J. concur

_____

_____

_____

JUDGES

---

[2] We note that the parties, on August 20, 2009, filed an "Agreement in Principal" that was signed in open court. Thereafter, on September 21, 2009, appellee filed a motion seeking an additional fourteen (14) days in which to provide the trial court with a mutual consent judgment entry finalizing the terms of the case. Such an entry was never filed. The August 20, 2009 "Agreement in Principal" and the October 2009 Settlement Agreement are not the same. For example, while the "Agreement in Principal" states that appellee's fee shall be 30% of the total bond fee, the October Agreement States that the fee shall be 30% "of the total amount collected."

[Cite as *Sylvester v. User Friendly Phone Book*, 2011-Ohio-6610.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

TONY SYLVESTER                          :
                                        :
                Plaintiff-Appellee      :
                                        :
                                        :
-vs-                                    :          JUDGMENT ENTRY
                                        :
USER FRIENDLY PHONE BOOK                :
                                        :
                Defendant-Appellant     :          CASE NO. 2010CA00327


    For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed and remanded in part.  Costs assessed 25% to appellant and 75% to appellee.


                                   _____

                                   _____

                                   _____

                                                JUDGES