[Cite as *Psarras v. Rayburn*, 2019-Ohio-2168.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| JAMES P. PSARRAS, et al., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2018-G-0181** |
| SARAH M. RAYBURN, TRUSTEE, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 2013 M 000943.

Judgment: Affirmed.

*Jonathan P. Blakely*, P.O. Box 217, Middlefield, OH 44062 (For Plaintiff-Appellant).

*Elaine Tassi*, 34955 Chardon Road, Willoughby Hills, OH 44094 (For Defendant-Appellee).


MARY JANE TRAPP, J.

{¶1} Appellant, James P. Psarras, M.D., appeals from the judgment of the Geauga County Court of Common Pleas, which found that he breached a combined lease and residential real estate purchase agreement with appellee, Sarah M. Rayburn, trustee, by not completing the purchase of the property at issue. During the summary judgment phase of this matter, the court found Ms. Rayburn violated the lease and Ohio's Landlord Tenant Law, Chapter 5321, by failing to make necessary repairs to prevent flooding in the residence. After the trial, however, the court found Dr. Psarras failed to offer sufficient

evidence to support his damage claim. The court also awarded Dr. Psarras interest on the security deposit and Ms. Rayburn damages for the breached purchase agreement by subtracting the eventual sale price from the contracted purchase price.

{¶2} Dr. Psarras now appeals, arguing flooding issues on the property negated his obligation to purchase the property. We disagree and affirm the trial court's judgment. Dr. Psarras signed a residential disclosure form, which disclosed the past flooding issue. He then waived his right to any inspection of the property even though he saw sump pumps in the basement of the residence before he signed the lease agreement with a purchase addendum and a separate residential real estate purchase agreement that contained an "as is" clause.

### Substantive and Procedural History

{¶3} Ms. Rayburn, as trustee, and Dr. Psarras, together with his now deceased wife, Elaine Psarras, M.D. (collectively "Dr. Psarras"), entered into a lease agreement with a purchase addendum and a separate purchase agreement to purchase real property located at 3063 Forest Drive, Pepper Pike, Ohio. In order to allow Dr. Psarras sufficient time to sell their Shaker Heights home and have the funds needed to purchase the Pepper Pike home, the parties agreed Dr. Psarras, his wife, as well as their daughter and son-in-law would lease the property beginning December 16, 2009 to August 15, 2010. The purchase agreement provided that the sale of the property would close on August 15, 2010.

{¶4} Prior to signing either agreement, Dr. Psarras received a residential disclosure form, which Ms. Rayburns' parents, the beneficiaries of the trust, completed and signed on July 8, 2008. Ms. Rayburns' parents disclosed a previous water intrusion,

2

describing the water leakage as follows: "basement flooded after rain – repaired new pumps in place, outdoor and indoor piping replaced new grates placed in front yard." Dr. Psarras waived his right to an inspection of the water intrusion and signed the residential disclosure form on October 8, 2009.

{¶5} Approximately a month later, on November 3, 2009, Dr. Psarras signed the lease/purchase and residential real estate purchase agreements. He testified he was being advised by counsel, but counsel did not negotiate the terms. Although the record is unclear, it appears Dr. Psarras did not have or does not recall having any of the documents at issue reviewed by his attorney before execution.

{¶6} Both the lease/purchase and purchase agreements contained integration clauses. The lease agreement required rent of $20,000 for the lease term, or $2,500 per month, including the payment of the last monthly installment upon the execution of the lease agreement as a deposit. The pre-printed lease agreement form at paragraph 3, "Damage Deposit," called for "ZERO DOLLARS." The lease further provided via a handwritten interlineation that "[t]enant accepts premises 'as is.'" Pursuant to paragraph 20, "Default," if Dr. Psarras failed to pay rent for seven days, Ms. Rayburn was entitled to "declare the entire balance of rent due and payable" and to "exercise all rights/remedies available to the landlord at law or equity", or could "elect to terminate" the lease, *"the purchase agreement and retain all amounts paid."* (Emphasis added to show the handwritten addition by interlineation.)

{¶7} In the lease addendum Dr. Psarras agreed to pay $510,000 for the purchase of the home. In the separate purchase agreement, the purchase price of $510,000 was restated, and that agreement also required earnest money of $51,000 to

be paid in two payments.  The first payment, $25,000, was due upon signing.  The second payment, $26,000, was due January 31, 2010, leaving a balance of $459,000 to be paid on or before the closing date.  Dr. Psarras timely paid both deposits.

{¶8}    The purchase agreement contained a waiver of inspection, in which Dr. Psarras waived his rights to general home, septic, water potability, well flow rate, radon, and mold inspections.  The agreement also contained an "as is" clause, which stated as follows:

{¶9}    "BUYER has examined the property and agrees that the property is being purchased in its "AS IS" PRESENT PHYSICAL CONDITION including any defects disclosed by the SELLER on the State of Ohio residential Property Disclosure Form, identified by any inspections requested by either party or on any other forms or addenda made a part of this Agreement or identified by any other source.  SELLER warrants to BUYER that SELLER has completed the State of Ohio residential Property Disclosure Form accurately and thoroughly and that no additional items of disclosure have occurred since the SELLER'S completion of that form.  SELLER agrees to notify BUYER in writing of any additional disclosure items that arise between the date of acceptance and December 15, 2009.  BUYER has not relied upon any representations, warranties or statements about the property (including but not limited to its condition or use) unless otherwise disclosed on this AGREEMENT or on the Residential Agreement Disclosure Form."  Dr. Psarras  initialed that he received a residential disclosure form and that he did not rely on any verbal representations made by brokers or their agents.

{¶10}  Under "additional terms" in the purchase agreement, it is handwritten that "[i]f tenant defaults under this agreement, the lease, or the lease addendum, all amounts

4

paid by tenant to landlord shall become nonrefundable and shall be the sole property of seller."

**{¶11}** The Psarras family started to remodel the interior of the home, which included new kitchen cabinets and installing carpet in the basement and furnishing a portion of it as a recreation room.

**{¶12}** The basement flooded on Memorial Day of 2010 and on approximately July 4, 2010. Dr. Psarras testified that both floodings were significant, resulting in several inches of standing water.

**{¶13}** Dr. Psarras was alerted to the flood on Memorial Day when the sump pump alarm went off. After the Memorial Day flood, the carpet was irreparable, and both the carpet and furniture were removed. They discontinued using the basement and called a clean-up crew and their real estate agent, Patty Munro.

**{¶14}** Approximately one week after the first flooding, Dr. Psarras called Ms. Rayburn. He informed her of the flooding and that he had spoken with the city building inspector. Apparently, the flooding issue was an ongoing problem that had involved the building inspector and the mayor of Pepper Pike, because the adjacent neighbor had previously not allowed piping to go through his property to fix the problem. Ms. Rayburn offered to pay for the carpeting. While she sympathized with the problem, she did not offer to go to the city and/or neighbor meetings called to address the flooding problem that were to follow.

**{¶15}** One month later, around July 4, 2010, Dr. Psarras learned from his daughter and son-in-law that the basement had flooded again with several inches of water.

{¶16} On August 9, 2010, Dr. Psarras sent Ms. Rayburn a letter to notify her that they "will exercise the option in the agreement to delay closing. We plan to move the date to a finalized October 15, 2010." He went on to write that he appreciated "her responsibility" with the water problem; they love the house, look forward to "many years there," and this "problem has been frustrating."

{¶17} Per the lease agreement, at the expiration of the term, a new holdover tenancy from month-to-month was created with an increase in monthly rent of $5,000.

{¶18} The following day Dr. Psarras received a letter from Ms. Rayburn's attorney, William P. Gibbons ("Mr. Gibbons") in which Mr. Gibbons informed Dr. Psarras there was no "option to continue rent," and that the residential property disclosure form Dr. Psarras signed plainly disclosed that the basement flooded and that a new pump was installed to correct the situation. The letter further informed Dr. Psarras that he had agreed to accept the property "as is present physical condition." Finally, Mr. Gibbons warned that if Dr. Psarras failed to close the transaction on August 15, 2010, he would be in breach of the agreement, Ms. Rayburn would seek specific performance as well as damages, and that he would "no longer be entitled to occupy the premises." The letter then listed several conditions under which Ms. Rayburn would consider extending the lease and closing date until October 15, 2010. This included paying $25,000 by August 13, 2010, a non-refundable amount, of which only half would be credited towards the purchase price.

{¶19} Dr. Psarras emailed his counsel, John P. Blakely ("Mr. Blakely"), regarding the August 10, 2010 letter the following day. Dr. Psarras wanted to share the details of the flooding and expressed that neither he, his wife, or the realtor were previously aware of any flooding problem. He then listed step-by-step the details of the flooding problem

6

and what he was doing to resolve it, including the issues with the neighbor and city hall, and explained that Ms. Rayburn promised to pay for the carpeting and the additional cost.

{¶20} On August 17, 2010, Dr. Psarras received another letter from Mr. Gibbons informing him that he was in default of the lease and purchase agreement as of August 15, 2010 because he failed to comply with the closing requirement and that the lease agreement had expired. As for the lease, Dr. Psarras was to vacate the premises immediately, and his August rent payment of $2,500 was not negotiated. Per the terms of the lease, as a holdover tenant, rent was now increased to $5,000 a month with a daily charge of $166.67 for every day he remained on the property past August 15.

{¶21} On August 19, 2010, Mr. Gibbons faxed Dr. Psarras' counsel and informed him that he changed the locks on the property. He stated: "[t]he Psarras's abandoned the property some time ago and no one has been living there at least since summer began and the lease has expired since August 15, 2010." Ms. Rayburn had someone investigate the property and claimed it was abandoned.

{¶22} When Dr. Psarras arrived home from work, he found the locks changed on the house and immediately called the Pepper Pike police department and Mr. Blakely. Mr. Gibbons met Dr. Psarras, his wife, daughter, and son-in-law on the front lawn of the property. Mr. Gibbons asked Dr. Psarras if he was going to be able to obtain a loan for the property. When Dr. Psarras responded affirmatively, Mr. Gibbons gave the Psarras family the new keys to the home.

{¶23} On September 3, 2010, Ms. Rayburn posted a "Notice to Leave Premises" indicating that the Psarras family must vacate the property on or before Wednesday, September 8, 2010. A forcible entry and detainer action was filed. Ms. Rayburn and Dr.

Psarras settled the eviction action in the Shaker Heights Municipal Court and agreed Dr. Psarras would vacate the property by October 23, 2010.

**{¶24}** The Psarras family did vacate the premises by October 23, 2010. Ms. Rayburn eventually sold the property for $365,000.

### *The Court Proceedings*

**{¶25}** Dr. Psarras and his wife filed a complaint in the Geauga County Court of Common Pleas on October 15, 2013, asking the court to declare Ms. Rayburn's retention of their $51,000 security deposit as unconscionable and enter judgment against Ms. Rayburn for $91,000 (the cost of the security deposit and kitchen cabinets the Psarras had purchased).

**{¶26}** Ms. Rayburn filed a motion to dismiss or, in the alternative, for summary judgment. The court overruled Ms. Rayburn's motion because she did not supply an appropriate affidavit from anyone in the position to speak to the accuracy and authenticity of the documents she submitted to the court to consider. She was ordered to file an answer within 14 days of the January 27, 2014 judgment entry.

**{¶27}** In addition to her answer, Ms. Rayburn filed a counterclaim seeking damages for breach of contract for the sale of real property, fraudulent representation, and past due rent.

**{¶28}** The case proceeded through a dilatory discovery process, with Dr. Psarras filing for numerous extensions. Ms. Rayburn filed a motion to disqualify Dr. Psarras' counsel citing a conflict inasmuch as Mr. Blakely had advised them in this transaction and thus may be a necessary witness. Ms. Rayburn also filed a motion to compel discovery and for sanctions.

8

**{¶29}** At the start of trial, the trial court determined Mr. Blakely was not a necessary witness and because this was a bench trial, the court overruled the disqualification motion.

**{¶30}** The court found Ms. Rayburn's motion to compel discovery well taken, and ordered Dr. Psarras to comply with Ms. Rayburn's request for production of documents and interrogatories. The court also deferred the matter of sanctions until trial.

**{¶31}** Both parties filed for summary judgment. The court granted Ms. Rayburn's motion for summary judgment on Dr. Psarras' claims for remodeling expenses, specifically the loss of the $40,000 deposit for new cabinets; and Dr. Psarras' motion for summary judgment as to Ms. Rayburn's violations of R.C. 5321 and the lease for failing to: (1) make repairs; (2) pay interest on the security deposit; and (3) refrain from self-help eviction. The question of damages for Ms. Rayburn's violations as well as Ms. Rayburn's counterclaims of breach of contract, fraud, and rent owed remained for trial.

**{¶32}** On July 27, 2016, a suggestion of death was filed for Dr. Elaine Campbell Psarras, but there was no substitution of parties sought by Dr. Psarras or by Ms. Rayburn. Consequently, any claims on behalf of or against Dr. Elaine Psarras were dismissed prior to trial.

**{¶33}** The case proceeded to a one-day trial before the court on October 19, 2016. Dr. Psarras testified as to the circumstances surrounding the lease/purchase and purchase agreements. He testified that he understood he was purchasing the property "as is" but believed the water flooding to be an issue that went to the heart of the parties' bargain. He claimed he fulfilled all of the conditions of the lease.

{¶34} Mr. Gibbons, Ms. Rayburn's counsel during the transaction, testified as to the eviction events and the various letters described above. He believed Dr. Psarras forfeited the $51,000 for failure to make a lease payment, but upon further questioning, testified Dr. Psarras fulfilled all the conditions of the lease but failed to comply with the purchase agreement. He explained the eviction action was based solely on Dr. Psarras occupying the premises without a lease agreement.

{¶35} Ms. Rayburn testified she never lived at the address but was named the trustee in a Limited Trust Agreement of October 3, 2008 in order to sell her parents' home. She recalled the conversation with Dr. Psarras about the flooding and telling him she would pay for the carpet via a deduction from the purchase price. She also testified she was only aware of the flooding issues that were disclosed on the residential disclosure form in July 2008, and that she was unaware of any unresolved flooding issue until Dr. Psarras' call after the flood on Memorial Day, 2010. Dr. Psarras and his family moved out, and she eventually sold the property on July 29, 2011.

{¶36} After trial, the court issued its judgment entry, finding: (1) Ms. Rayburn owed Dr. Psarras $2,125 as interest on the security deposit; (2) insufficient evidence was presented to enable the court to determine damages, if any, suffered by Dr. Psarras as a result of Ms. Rayburn's failure to repair the leased premises; (3) Ms. Rayburn's actions with regard to the security deposit and lease were not unconscionable; (4) Dr. Psarras breached the agreement to purchase the subject real property for $459,000; (5) as a result of the breach, Ms. Rayburn suffered $94,000 in damages, the difference between the contracted price and eventual sales price; (6) Ms. Rayburn incurred $540 in attorney fees as a result of Dr. Psarras failure to comply with discovery orders; and lastly, (7) Ms.

Rayburn failed to prove Dr. Psarras made fraudulent representations. Judgment was entered in favor of Ms. Rayburn for $41,415 plus interest from the date of August 15, 2010.

**{¶37}** Dr. Psarras timely appealed, raising the following assignment of error:

**{¶38}** "The trial court erred as a matter of law and abused its discretion in finding Appellant breached the purchase agreement by not purchasing the property when it found Appellee breached the lease by failing to make repairs, and awarded interest for the security deposit."

## Standard of Review

**{¶39}** "When confronted with an issue about contract interpretation, the role of the trial court is to give effect to the intent of the parties to the agreement." (Citation omitted.) *Kaufman v. Byers*, 11th Dist. Geauga No. 2003-G-2525, 2004-Ohio-6346, ¶20.

**{¶40}** We review a trial court's application of law to a breach of a contract de novo. *Id.* at ¶21, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995); *Ohio Historical Soc. v. Gen Maintenance & Eng. Co.*, 65 Ohio App.3d 139, 146 (10th Dist.1989).

**{¶41}** In his sole assignment of error, Dr. Psarras contends (1) Ms. Rayburn failed to perform under the contract because she did not return the security deposit, (2) he was excused from performing under the contract due to the unresolved flooding issues, (3) he is not the cause of any damages sustained by Ms. Rayburn, and in the alternative, (4) the lease and purchase agreement should be rescinded due to mutual mistake.

### *Landlord's Failure to Make Repairs*

11

**{¶42}** Dr. Psarras argues, without citing to any legal authority apart from R.C. 5321.16, that when the trial court awarded interest on the security deposit, it established Ms. Rayburn was not entitled to retain the $51,000 deposit. Further, he asserts that because both agreements had integration clauses, they were "effectively one transaction." Thus, if Ms. Rayburn was found to have failed to perform in any manner, he argues this constitutes a breach that would preclude her from retaining the $51,000.

**{¶43}** Firstly, Dr. Psarras misapprehends the import of integration clauses, which are designed to trigger the parol evidence rule. "An integration need not be reflected in only one document; the parties' complete agreement can consist of or be reflected in multiple documents." In general, 11 *Williston on Contracts*, Section 33:14 (4th ed. 2019)

**{¶44}** Secondly, the plain language of R.C. 5321.16(A) mandates the payment of interest on a security deposit even if the entire deposit is returned at the end of the tenancy.

**{¶45}** Finally, the trial court in fact found Ms. Rayburn's actions "in regards to the security deposit and lease were not unconscionable," and therefore did not find Dr. Psarras was entitled to the return of any or all of the deposit.

**{¶46}** It may be arguable whether Dr. Psarras is indeed entitled to interest pursuant to R.C. 5321.16(A)[1] because the only lease provision regarding a deposit of any kind was under the term "Rent," requiring the first and last month's rent installment upon execution of the lease. The only reference to the $51,000 amount was in the separate purchase agreement, which required that the initial installment toward the $51,000 in

---

1. R.C. 5321.16(A) requires a landlord holding a security deposit in an amount exceeding $50 or one month's rent, whichever is greater, to pay 5 percent interest on the excess per annum if the tenant remains in possession for six months or more.

12

"Earnest Money" be deposited upon execution of the purchase agreement. The $51,000 was to be credited against the purchase price.

{¶47} But this issue was not raised below or in this appeal, and the trial court considered the earnest money to be a deposit requiring the payment of statutory interest under landlord-tenant law apparently because it was being held during the period of time Dr. Psarras was a "tenant." In any event, as noted previously, it does not follow, as Dr. Psarras argues, that when the trial court awarded statutory interest that award was made because Ms. Rayburn failed to perform under the purchase agreement.

{¶48} In regard to the unresolved flooding issues, the evidence established Ms. Rayburn was unaware that the earlier flooding issues disclosed to Dr. Psarras had not been resolved by the installation of new pumps, piping, and plates until after the Memorial Day flood, which damaged the carpeting. He failed to present any evidence of any other damages he suffered as a result of the July flooding. Further, he submitted no evidence that the water flooding rendered the house uninhabitable or that it materially affected his health and safety. Therefore, he did not have a right to terminate his lease under R.C. 5321.07(B) for his landlord's failure to repair as he now claims.

{¶49} "It is not a landlord's failure to fix any problem or to remedy any condition 'within a reasonable time * * * or within thirty days, which is sooner' that gives a tenant a right to terminate his lease under R.C. 5321.07(B). The tenant must establish that the landlord failed to fulfill an obligation imposed by R.C. 5321.04 or the rental agreement, that the conditions of the residential premises were such that the tenant reasonably believed that the landlord had failed to fulfill such an obligation or that a governmental agency found that the premises were not in compliance with building, housing, health or

13

safety codes that could materially affect the health and safety of an occupant." *Pedra Properties, L.L.C. v. Justmann*, 8th Cuyahoga Dist. 102909, 2015-Ohio-5427, ¶19, citing R.C. 5321.07; *see also Wenzke v. Baird,* 6th Dist. Lucas No. L-13-1244, 2014-Ohio-3069, ¶13 ("[T]he remedies available under R.C. 5321.07(B) require a tenant to show that the landlord violated (1) the lease agreement, (2) a building code that could materially affect health or safety, or (3) R.C. 5321.04").

**{¶50}** "[A] tenant must show that a condition exists that renders the premises unfit or uninhabitable in order to terminate a lease based on R.C. 5321.04(A)(2)." *Id.* at ¶ 20. The evidence before the trial court failed to establish that the water intrusion during more severe storms rendered the entire premises unfit or uninhabitable.

**{¶51}** Dr. Psarras failed to meet the statutory requirements of R.C. 5321.07 for terminating a lease at the time the flooding occurred and cannot raise this as an issue for the first time on appeal.

**{¶52}** Moreover, as explained above, the integration clauses do not support Dr. Psarras' argument that Ms. Rayburn "lost her right to enforce the purchase agreement" by her failure to make repairs.

### *Caveat Emptor and Fraudulent Misrepresentation*

**{¶53}** Dr. Psarras' assignment of error also fails due to the doctrine of caveat emptor and the "as is" clause in his purchase agreement. Although this case at first blush seems quite complex due to the two separate agreements, it is at heart a simple residential real estate purchase agreement preceded by a lease term.

**{¶54}** As we noted in *Thaler v. Zovko,* 11th Dist. Lake No. 2008-L-091, 2008-Ohio-6881, "[t]he doctrine of caveat emptor is designed to finalize real estate transactions by

14

preventing disappointed real estate buyers from litigating every imperfection existing in residential property." (Citations omitted.) *Id.* at ¶31. "The doctrine of caveat emptor precludes recovery in an action by the purchaser * * * where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." (Citations omitted.) *Id.*

{¶55} In this case, there is no question from the testimony and evidentiary materials in the record that Dr. Psarras was aware of potential flooding problems. The basement had two sump pumps and the residential disclosure form disclosed the past flooding problems and what was done to resolve them. Dr. Psarras chose to forgo any type of inspection prior to signing the lease and purchase agreements. He consulted with his attorney in regard to the transaction and apparently chose not to have his counsel review the documents.

{¶56} "[W]hen a buyer agrees to accept property 'as is,' the seller is relieved of any duty to disclose latent defects." (Citations omitted.) *Id.* at ¶37.

{¶57} "That being said, an 'as is' contract relieves a seller only of the duty of disclosing latent defects, it does not 'bar a buyer from asserting claims of fraudulent misrepresentation or fraudulent concealment. * * * '" (Citations omitted.) *Id.* at ¶38.

{¶58} As for Dr. Psarras' allegation of fraudulent misrepresentation, the record is devoid of any evidence of fraud on the part of Ms. Rayburn. Rather, had Dr. Psarras chosen to have an inspection of the water flooding prior to signing the lease and purchase agreement, he would have learned (as he did after the flooding occurred), that the flooding problem on the property was actually a known issue in the city of Pepper Pike. The city

15

had tried to resolve the issue with the neighboring property in the past. Further, the fact that there were two sump pumps in the basement is open and obvious and begs for a prospective buyer to do a more thorough investigation before signing any agreement to purchase.

{¶59} Dr. Psarras has failed to meet the elements which constitute the basis for a claim of fraudulent misrepresentation, which are: "'(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.'" *Goddard v. Stabile*, 185 Ohio App.3d 485, 2009-Ohio-6375, ¶30 (11th Dist.), quoting *Kimball v. Duy*, 11th Dist. Lake No. 2002-L-046, 2002-Ohio-7279, ¶23, quoting *Cardi v. Gump*, 121 Ohio App.3d 16, 22 (8th Dist.1997).

{¶60} There is no evidence Ms. Rayburn actively concealed or even was aware of the flooding problems beyond what was disclosed in the residential real estate disclosure form. Ms. Rayburn testified that she believed that once Dr. Psarras signed the purchase agreement, he was agreeing to purchase the property "as is." She offered to pay for the carpet he installed in the basement that was ruined from the first flood and testified she would have deducted the cost from the purchase price.

{¶61} A "buyer cannot be said to have justifiably relied upon misrepresentations made by the seller where the agreement is clearly contingent upon the inspection rather any alleged misrepresentations." *Bencivenni v. Dietz*, 11th Dist. Lake No. 2012-L-127,

16

2013-Ohio-4549, ¶47, quoting *Kimball* at ¶24.  Dr. Psarras was able to inspect the home but chose to waive the condition of an inspection and signed the purchase agreements.

### *Damages for a Breach of Real Estate Contract*

**{¶62}** Without citing to any legal authority, Dr. Psarras contends he is not responsible for Ms. Rayburn's damages that resulted from the breach because it was her failure to correct the flooding issues that caused her damages.  As already noted, this contention is wholly without merit, as Dr. Psarras contracted with Ms. Rayburn to purchase the property for $510,000 after waiving any inspection of the property and signing both the lease and purchase agreements, one of which contained an "as is" clause.  He cannot now claim "buyer's remorse," unilaterally fail to perform under the contract, and be free from any corresponding damage.

### *The Alternative Remedy of Rescission for Mutual Mistake*

**{¶63}** Lastly, Dr. Psarras argues the lease and purchase agreement should be rescinded due to mutual mistake because both parties knew or believed the flooding issues in the past had not been resolved by the prior repairs performed.  The residential real estate disclosure form disclosed that the basement flooded after rain, and that it was repaired with new pumps in place as well as new outdoor and indoor piping and grates placed in the front yard.

**{¶64}** While in some cases, mutual mistake may be a ground for rescission of a contract, this is not the case here, where a residential property disclosure form was received.  Where residential disclosure forms are received, "rescission is not an available remedy." *Goddard*, *supra*, at ¶43, quoting *Chamar v. Schivitz,* 11th Dist. Lake No. 2002-L-181, 2004-Ohio-1957, ¶18-20, quoting R.C. 5302.30(K)(3)(d) and *Wilson v. Safarek*,

17

131 Ohio App.3d 622, 625 (7th Dist.1999) ("[I]f a buyer receives the disclosure form before executing the transfer agreement, then the buyer is aware of the various disclosures required by statute before he decides to make the purchase").

{¶65} It bears repeating that the "doctrine of caveat emptor is designed to finalize real estate transactions by preventing disappointed real estate buyers from litigating every imperfection existing in residential property," especially where, as is the case here, there is no fraud and the buyers were well aware of the defect, yet chose not to inspect the property further, and when an issue then arose, breached the contract and "reneged" on the deal. *Thaler* at ¶48. A buyer can never be too "aware."

{¶66} Dr. Psarras' sole assignment of error is without merit.

{¶67} The judgment of the Geauga County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.

18